497 A.2d 249

**Mabel COVER, Alice Salzillo, Richard Woodhall, Kenneth Horrell, Ann Staudt and R. Joseph Knechtel, Appellants,**

**v.**

**CUSHING CAPITAL CORPORATION, Carl J. Fugh and Ida Mae Fugh, Appellees.**

Superior Court of Pennsylvania.

Argued March 6, 1985.

Filed Aug. 9, 1985.

---

Melanie DiPietro, Pittsburgh, for appellants.

Barry M. Simpson, Assistant District Attorney, Pittsburgh, for appellees.

Before BROSKY, WIEAND and LEDERER,* JJ.

WIEAND, Judge:

The issue in this appeal is whether a broker-dealer can be held vicariously liable for the acts of an agent or liable for negligent supervision of an agent who has fraudulently obtained and converted moneys from would-be investors. The trial court, following trial without jury, found that the principal was not liable for fraudulent machinations of the agent which were unknown to the broker-dealer. We affirm.

In 1972, while associated with Investors Security, Carl Fugh met Alice Salzillo. She, in turn, introduced him to Mabel Cover, Richard Woodhall, Kenneth Horrell, and R. Joseph Knechtel. At various times, these persons and also Ann Staudt paid money to Fugh in exchange for his promise to invest their moneys for them. Beginning in 1974, Fugh began to solicit investments in commercial paper or floating notes with an annual yield of tax free interest represented to be twelve to fifteen percent. In return for moneys paid, Fugh delivered handwritten receipts. The receipts were issued by Fugh alone and did not contain the name of any investment firm which Fugh might have purported to represent. He told the investors that he could invest money only in block amounts of $100,000; and, therefore, few questioned his practice of depositing their funds into his personal account. They assumed that Fugh would draw checks from his account to purchase investments for them when the amount warranted investment. The investors, who are the present appellants, knew that Fugh was originally asso-

---

* The Honorable William J. Lederer, Senior Judge, of the Court of Common Pleas of Philadelphia County, Pennsylvania, is sitting by designation.

ciated with Investors Security.[1] In mid-1975, however, Investors Security ceased doing business, and Fugh became a registered representative of Cushing Capital Corporation, a New York broker of stocks, bonds, and mutual funds. As a registered representative, Fugh was authorized by Cushing Capital to sell certain mutual funds and stocks listed on the New York Stock Exchange. Cushing Capital did not deal in commercial paper, and Fugh was not authorized to handle investments therein on Cushing's behalf. Although Fugh told the appellant-investors that he had changed his affiliation, he also represented to them that he was continuing in his private capacity as a finder of capital. Cushing Capital, the evidence showed, was not aware of Fugh's accepting moneys for investment from appellants or of the fact that Fugh was depositing appellants' moneys in his private account. The moneys were not delivered to Cushing Capital and the investors did not ever receive acknowledgements from Cushing Capital that moneys had been received or that investments were to be made. The evidence also showed that none of the appellant-investors ever made inquiry to either Investors Security or Cushing Capital regarding the moneys which they had delivered to Fugh for investment. In 1978, after Fugh had discontinued his association with Cushing Capital, it was discovered that he had not used appellants' moneys to purchase investments but had converted the moneys to his own use. In January 1979, Fugh entered pleas of guilty to theft by failure to make required disposition and to violating the Pennsylvania Securities Act. As a result of Fugh's dishonest scheme, he caused losses to appellant-investors as follows:

| | |
|---|---|
| Mabel Cover | $50,796.53 |
| Alice Salzillo | 32,669.63 |
| Richard Woodhall | 3,269.89 |
| Kenneth Horrell | 9,586.25 |
| R. Joseph Knechtel | 1,150.00 |
| Ann Staudt | 89,285.81 |

1. At least three of them had made legitimate investments with Investors Security which Fugh had handled for them.

The appellant-investors commenced a civil action against Fugh and Cushing Capital, which produced a default judgment against Fugh. After trial without jury, the court found that Cushing Capital was not liable for the losses sustained by appellants. Exceptions to the trial court's adjudication were dismissed, and this appeal followed.

Our scope of review is limited. The findings of the trial court sitting without a jury have the same force and effect as a jury's verdict. *Snellbaker v. Herrmann*, 315 Pa.Super. 520, 526, 462 A.2d 713, 716 (1983); *Bigham v. Wenschhof*, 295 Pa.Super. 146, 148, 441 A.2d 391, 392 (1982). They will not be disturbed unless they are unsupported by competent evidence. *Snellbaker v. Herrmann, supra; Slaseman v. Myers*, 309 Pa.Super. 537, 540, 455 A.2d 1213, 1215 (1983). In this case, the trial court found as a fact that Fugh had not been authorized to sell commercial paper. The court also found that appellants had no accounts with Cushing Capital and that Cushing Capital had no knowledge that appellants were giving Fugh money to invest for them, and no knowledge of the amounts so paid. Fugh's scheme was entirely extracurricular, and Cushing Capital was not aware of it. These findings are supported by the evidence.

Appellants argue that Cushing Capital is vicariously liable, according to principles of respondeat superior, for the fraudulent misrepresentations made by Fugh and for his conversions of funds. The law is clear, however, that "where an agent acts in his own interest which is antagonistic to that of his principal, or commits a fraud for his own benefit in a matter which is beyond the scope of his actual or apparent authority or employment, the principal who has received no benefit therefrom will not be liable for the agent's tortious act." *Todd v. Skelly*, 384 Pa. 423, 429, 120 A.2d 906, 909 (1956). Cf. *Smalich v. Westfall*, 440 Pa. 409, 269 A.2d 476 (1970) (principal not liable for harm caused by agent's unauthorized negligent physical conduct). See also: 3 C.J.S. *Agency* § 423 (1973); 3 Am.Jur.2d *Agency* § 262 (1962). A principal, moreover, is not liable in

deceit for his agent's false representations where he has neither authorized nor participated in them and has not knowingly permitted the agent to make them. *Littler v. Dunbar*, 365 Pa. 277, 278, 74 A.2d 650, 651 (1950); *Shane v. Hoffmann*, 227 Pa.Super. 176, 183, 324 A.2d 532, 537 (1974). Proof of scienter on the part of the principal at the time of the misrepresentation is an essential element of a cause of action against the principal for fraud and deceit practiced by the agent. *Littler v. Dunbar, supra; Shane v. Hoffmann, supra.* Accord: *Aiello v. Ed Saxe Real Estate, Inc.*, 327 Pa.Super. 429, 434–436, 476 A.2d 27, 30–31 (1984); *Eckrich v. DiNardo*, 283 Pa.Super. 84, 90, 423 A.2d 727, 729–730 (1980).

■ Fugh, unquestionably, did not have actual authority to sell commercial paper or accept money from investors for deposit in his personal account. The trial court also found that Fugh did not have apparent authority. The appellants were customers of Fugh. Fugh had cultivated them and had initially obtained moneys from them prior to his affiliation with Cushing Capital. These investors established a friendly association with Fugh; and, because of his affability, as well as his apparent religious background and hard work, they relied upon him and trusted him. At no time did appellants have direct communication with Cushing Capital. Indeed, appellants never made inquiry of Cushing Capital regarding their "investments"; all inquiries were made to and answered by Fugh. He, and he alone, was engaged in the scheme to defraud. His scheme was outside the scope of his employment and was antagonistic to his principal. The evidence showed and the trial court found as fact that Cushing Capital had no knowledge of Fugh's personal machinations, which were calculated to line his pockets at the expense of his friends and customers. Under these circumstances, Cushing Capital was not obligated to answer vicariously for the losses sustained as a result of Fugh's peculations.

Appellants contend also that Cushing Capital was negligent for failing to supervise adequately the activities of its agent. They argue that rules and regulations adopted by

the Pennsylvania Securities Commission pursuant to the Pennsylvania Securities Act of December 5, 1972, P.L. 1280, No. 284, 70 P.S. § 1–101 et seq., imposed upon Cushing Capital a duty to supervise Fugh's activities.[2] The trial court determined, however, that the Commission's regulations did not create a new cause of action or establish an absolute standard of care for a broker-dealer. The trial court found further that Cushing Capital had not been negligent in failing to discover Fugh's private scheme to defraud his customers.

 Section 506 of the Securities Act of 1972 specifically provides:

2. These regulations provide, inter alia, at 64 Pa.Code § 305.011, as follows:

(a) Every broker-dealer and investment adviser registered or required to be registered under the act shall exercise diligent supervision over the securities activities of all of its agents and employes. As evidence of compliance with the requirement to supervise the procedures and systems, the following shall be implemented by the broker-dealer or investment adviser:

(1) Every agent or employe shall be subject to the supervision of a supervisor.

(2) Written procedures, a copy of which shall be kept in each business office, shall be established, maintained, and enforced and shall set forth the procedures adopted to comply with the following duties imposed by this section:

(i) The review and written approval by the designated supervisor of the opening of each new customer account.

(ii) The frequent examination of customer accounts to detect and prevent irregularities or abuses.

(iii) The prompt review and written approval of the handling of all customer complaints.

(iv) The prompt review and written approval by the designated supervisor of all correspondence pertaining to the solicitation and execution of all securities transactions.

(v) The review and written approval by the designated supervisor of the delegation by any customer of discretionary authority with respect to his account and the frequent examination of all such discretionary accounts to prevent irregularities or abuses.

(3) Each office location shall be periodically inspected to insure that the written procedures are enforced.

(b) Every issuer who employes agents in connection with any security or transaction not exempted by sections 202 or 203 of the act (70 P.S. §§ 1–202, 1–203) shall be subject to the supervision requirements of subsection (a) of this section with respect to such agents.

Except as explicitly provided in this act, no civil liability in favor of any private party shall arise against any person by implication from or as a result of the violation of any provision of this act or any rule or order hereunder. Nothing in this act shall limit any liability which might exist by virtue of any other statute or under common law if this act were not in effect.

70 P.S. § 1–506. It seems clear, therefore, that the legislature did not intend to create a new cause of action against a broker-dealer or establish a standard of care for investment brokers. Regulations adopted pursuant to the Securities Act were intended to make broker-dealers responsible to the state, rather than to any specific person or group. They were not intended to provide an absolute standard of care to be applied in a civil action against a broker where an agent, unbeknownst to the broker, engaged in a private scheme to defraud his friends and customers. See: Restatement (Second) of Torts § 288B, comment d.

▬ Moreover, even if the administrative regulation were relevant to establish a standard of care, it seems obvious, as the trial court held, that the regulation imposed a duty to supervise only with respect to the agent's activities conducted within the scope of his employment. There was no duty upon Cushing Capital to discover, at its peril, the fraudulent machinations in which Fugh was involved outside the scope of his employment. Thus, the trial court could appropriately observe, as it did, that the broker's duty of supervision could not "realistically extend to customers of an agent whose accounts [were] not placed with the broker-dealer" and of which the broker-dealer had no knowledge.

Our review of the record discloses evidentiary support for the trial court's finding that Cushing Capital was not negligent in failing to discover the fraudulent activities of Fugh. For this reason and also because Cushing Capital was not vicariously liable for Fugh's fraudulent acts, the order of the trial court will be affirmed.

Order affirmed.