582 A.2d 23

**Kurt A. and Janice FETZER**

v.

**J. Richard VISHNESKI, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1990.

Filed Nov. 8, 1990.

Frank W. Hayes, West Chester, for appellant.

Jamie W. Goncharoff, Dowington, for appellees.

Before ROWLEY, McEWEN and CERCONE, JJ.

ROWLEY, Judge:

This appeal by J. Richard Vishneski arises from a judgment entered against him in an action for breach of an implied warranty of habitability. Appellees, Kurt and Janice Fetzer, entered into a construction contract with appellant for the construction of a new home for appellees, and construction was completed in September, 1984. Approximately six months after moving into their new house, appellees noticed that one of the house's eight skylights was leaking. Eventually, all eight of the skylights began leaking.

During the next six to nine months, appellees telephoned and wrote to appellant approximately twenty to thirty times and asked him to stop the leaking. When appellant did not take any action to fix the leaking, appellees contacted Loomis Brothers, another construction firm. Loomis Brothers informed appellees that the skylights, which were made of plastic, had been improperly installed (TT 3/29/1989, p. 15), were rippled (TT 3/29/1989, p. 17–19), and could not be fixed. According to Loomis Brothers, the only way to stop the leaking would be to replace the skylights. Loomis Brothers replaced the skylights, and appellees, claiming appellant had breached his implied warranty of habitability, sued appellant to recover the cost of replacing the skylights.[1]

The trial court, sitting without a jury, found in favor of appellees and awarded them $6,575.00, including $5,100.00 for the replacement cost of the skylights. Both parties

___

1. Appellees sued appellant for other defects as well, including defects in the driveway, floors, roof, breakfast room, floor framing and for water damage caused by the leaking skylights. However only the $5,100.00 awarded as the replacement cost of the skylights is at issue in this appeal.

filed post-trial motions which were denied. Judgment was entered in favor of appellees, and appellant appealed from that judgment. Appellant raises three issues on appeal: 1) the trial court erred in awarding appellees the $5,100.00 replacement cost because appellees failed to establish construction defects on the part of appellant; 2) the trial court incorrectly chose "replacement" as the measure of damages when repairs were feasible; or 3) in the alternative, if repairs were not feasible, the correct measure of damages was the diminution in fair market value. Having carefully reviewed the record and considered the arguments presented, we affirm.

The doctrine of implied warranty of habitability, as it applies to builder-vendors, was adopted by the Supreme Court of Pennsylvania in *Elderkin v. Gaster*, 447 Pa. 118, 288 A.2d 771 (1972). The Court said: "We thus hold that the builder-vendor impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended—habitation." *Id.*, 447 Pa. at 128, 288 A.2d at 777. The warranty of habitability is implied by law into every contract for the sale of a new home. *Ecksel v. Orleans Constr. Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987).

Appellant first argues that there was insufficient evidence for the trial court to find that the leakage appellees experienced was caused by appellant's improper installation of the skylights. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict winner, the appellees in the present case. Our sole task is to decide if there was sufficient evidence to sustain the verdict. *Fannin v. Cratty*, 331 Pa.Super. 326, 480 A.2d 1056 (1984). When sitting without a jury, the trial court acts as the finder of fact, and the trial court's findings have the same force and effect as a jury verdict. *Rizzo v. Haines*, 357 Pa.Super. 57, 515 A.2d 321 (1986), *aff'd.*, 520 Pa. 484, 555 A.2d 58 (1989); *Cover v. Cushing Capital Corp.*, 344 Pa.Super. 593, 497 A.2d 249 (1985). These findings will not be reversed "unless they are unsupported

by competent evidence." *Cover*, at 598, 497 A.2d at 252 (citations omitted).

In the instant case, appellant is relying on only the evidence presented by himself and Mr. Keehn, an independent contractor who works for appellant, in contending that the windows were properly installed. Appellees' evidence showed that the windows were improperly installed. The trial court found that Mr. Bonney, a Loomis Brothers employee testifying for appellees, testified that "the skylights had been improperly installed, that they were made of cheap and 'lousy' material, and that their condition was such that they had to be replaced." (TC Op. 4/24/90 at 2, 3). The trial court found Mr. Bonney's testimony to be more credible than the testimony of Mr. Keehn, who testified for appellant and who "merely visually inspected Mr. Fetzer's home for fifteen minutes on the day of trial; he took no measurements and he did not even climb onto the roof." (TC Op. 4/24/90 at 3). "It is within the province of the trial judge, sitting without a jury, to judge the credibility of witnesses and to weigh their testimony." *Allegheny County v. Monzo*, 509 Pa. 26, 35, 500 A.2d 1096, 1101 (1985). The trial court further found that, after the skylights were replaced, appellees had no further leakage problems. These findings are amply supported by the record.

Moreover, even if the trial court had found that appellant had properly installed the windows, that fact would not relieve appellant from liability for breach of the implied warranty of habitability if the windows unequivocally leaked. The leakage itself is sufficient to breach the implied warranty of habitability. *Ecksel v. Orleans Constr. Co.*, 360 Pa.Super. 119, 519 A.2d 1021 (1987) (leaky basement breaches the warranty of habitability); *Tyus v. Resta*, 328 Pa.Super. 11, 476 A.2d 427 (1984) (leaky crawlspace breaches the warranty of habitability). The evidence in the record is more than sufficient to support the trial court's conclusion that appellant breached the implied warranty of habitability.

Appellant's next two issues deal with the measure of damages applied by the trial court. In essence, appellant is arguing that appellees' evidence on damages is insufficient to support the verdict of $5,100.00. Appellant first argues that the trial court erred in using "replacement cost" as the measure of damages when repairs were feasible.[2] Damages for the defective performance of a building contract are often measured by looking to "the cost of ... correcting the defects by another contractor." *Douglass v. Licciardi Constr. Co., Inc.*, 386 Pa.Super. 292, 297, 562 A.2d 913, 915–16 (1989). In the instant case, the defect that needed to be corrected was the leakage from the skylights. Appellant submits that remucking would have constituted an inexpensive and feasible repair. Once again, we are bound by the trial court's findings of fact. The trial court found that remucking would not have stopped the leaking and that the skylights' defects could be remedied only by being replaced. (TC Op. 4/24/90 at 4). Thus, the correct measure of damages was the cost of correcting the leakage, and the amount of damages was the replacement cost of the skylights.

Appellant argues, in the alternative, that if remucking were not feasible, the correct measure of damages should have been the difference in fair market value of the house as warranted and as built, rather than the replacement cost of the windows. Both replacement cost and diminution in market value are recognized measures of damages for breach of an implied warranty of habitability. Diminution in market value is an appropriate measure of damages if the building as a whole has been impaired,[3] or if

2. Both parties agree that the measure of damages is the reasonable cost of remedying the defects. (Appellant's Brief, p. 8, 9; Appellees' Brief, p. 12). However, appellant appears (mistakenly) to assume that remedying the defects encompasses only repairing and not replacing the skylights.

3. "[I]f the defects or omissions are remediable only at great expense, or if defective material has become an inherent part of the building so that the defect cannot be remedied except by taking down and doing over some substantial portion of the work, involving such an expenditure that the contractor would be deprived of adequate compensation,

the cost of remedying the defects is grossly disproportionate to the diminution in market value. The fact that the cost of replacement somewhat exceeds the diminution in market value does not bar the homeowner from recovering the cost of replacement.[4]

Further, once the homeowner has presented evidence as to the cost of remedying the defects, the burden is on the contractor to challenge this evidence.

> If the owner has had the repair or completion performed at the time of trial, the amount paid by the owner may be presumed to be reasonable, subject to rebuttal evidence by the contractor. The amount actually paid by the owner to another contractor for correction of the defective work, within a reasonable time after the breach, is strong and reliable evidence in determining the time and amount of damages.

Annotation, *Modern Status of Rule as to Whether Cost of Correction or Difference in Value of Structures is Proper Measure of Damages for Breach of Construction Contract*, 41 A.L.R.4th 131 § 9 (1985) (citations omitted, emphasis added). In the instant case, appellees presented the

the amount allowable to the owner is the difference between the value of the building or structure as constructed and the value which it would have had if it had been constructed in entire conformity with the contract requirements." 13 Am.Jur.2d *Building and Construction Contracts* § 80 (1964).

4. "[S]ometimes, especially if a contractor's performance is defective rather than incomplete, it is impossible to prove the loss in value to the owner with reasonable certainty. In that case ... the owner can usually recover damages based on the cost to remedy the defects, even if this gives the owner a recovery somewhat in excess of the loss to him or her.... [I]t is better that the owner receive a small windfall than that the owner be undercompensated by being limited to the resulting diminution in the market price of the property." Annotation, *Modern Status of Rule as to Whether Cost of Correction or Difference in Value of Structures is Proper Measure of Damages for Breach of Construction Contract*, 41 A.L.R.4th 131 § 23 (1985), *citing* Restatement (Second) of Contracts § 348, comment c (1981).

"Where the cost of remedying the defects in construction is not clearly disproportionate to the probable loss in value to the injured party, the breaching contractor cannot require that the injured party's damages be measured by the difference between the market price of the property without the defects and the price of the property with the defects." *Douglass*, at 297, 562 A.2d at 916.

testimony of Mr. Bonney, the contractor who had replaced the skylights. Mr. Bonney testified as to the necessity and cost of replacement. Appellant failed to rebut this evidence. He introduced no evidence of his own as to the diminution in market value. In fact, as the trial court noted:

Defendant did not present any *credible* evidence as to repair versus replacement. Likewise, he did not challenge the reasonableness of the $5,100.00 cost of replacement with any credible evidence.

(TC Op. 4/24/90 at 4). Since appellant failed to rebut appellees' evidence as to the cost of replacement, and since the leakage and the need for replacement are supported by competent evidence, the trial court correctly awarded appellees the replacement cost of the skylights.

We further note that appellant's reliance on *Gadbois v. Leb–Co. Builders, Inc.*, 312 Pa.Super. 144, 458 A.2d 555 (1983), is misplaced. *Gadbois* involved an action by homeowners against a contractor who had installed defective sewage systems in their homes. When sewage began to back up, the contractor merely dug pits to collect the sewage; he did not attempt to fix the defective systems. In the ensuing breach of warranty of habitability action, the homeowners presented evidence that the diminution in fair market value of the homes as warranted and as built was approximately $18,000.00 each. In their defense, the defendants presented evidence that the defective sewage systems could be repaired by replacing them with "conventional subsurface sewage disposal system[s] with septic tank[s]" at the cost of $2,750.00 each. *Id.*, 312 Pa.Superior Ct. at 153, 458 A.2d at 560. Finding that the testimony of the contractor's witness, that repairs were feasible, was not credible, the court awarded the homeowners the diminution in fair market value.

Thus, in *Gadbois*, the homeowners presented evidence as to diminution in market value, and the contractor attempted to rebut this evidence with testimony as to replacement cost. In the instant case, the homeowners presented evidence as to replacement cost. However appellant made no

effort to rebut this evidence by presenting evidence as to diminution in market value. Having failed to meet his burden of rebuttal at trial, appellant cannot argue on appeal that he should now be given an opportunity to rebut appellees' evidence.

Judgment affirmed.