666 A.2d 1103

Leonard WEISENBERG, Abe A. Morris, and John Runge t/a
New Mount Royal Towers Partnership a Pennsylvania
General Partnership, Appellee,

v.

MOUNT ROYAL ASSOCIATES, a Pennsylvania Limited Partner-
ship, Estate of George Bickley, Jr., Deceased, an Individual and
General Partner, Adam Kauffman, an Individual and General
Partner, Ronald Reichman, an Individual and General Partner,
Appellee. (Two Cases)

Appeal of MOUNT ROYAL ASSOCIATES, a Pennsylvania
Limited Partnership and Ronald Reichman, an
Individual and General Partner, Appellant.

Appeal of Adam KAUFFMAN, an Individual
and General Partner, Appellant.

Superior Court of Pennsylvania.

Argued May 24, 1995.

Filed Oct. 31, 1995.

David A. Scotti, Pittsburgh, for Mount Royal Associates & Ronald Reichman.

Alan J. Davis, Philadelphia, for Adam Kauffman.

Amy Greer, Pittsburgh, for Weisenberg, Morris & Runge.

Before WIEAND, DEL SOLE and CERCONE, JJ.

DEL SOLE, Judge:

Before us are related appeals taken following a jury trial and subsequent decision by the trial court granting a motion for judgment notwithstanding the verdict. A judgment in the amount of $746,268.49 was ultimately entered in favor of the plaintiffs from which defendants, Mount Royal Associates and Ronald Reichman, filed an appeal at docket number 2207 PGH 94, and defendant, Adam Kauffman, filed an appeal at 2208 PGH 94.

Plaintiffs brought an action against Mount Royal Associates, a limited partnership, and certain named individuals, who either had served, or were serving as general partners. Plaintiffs sought to recover for non-payment of a promissory note executed in connection with the sale of an apartment complex in the amount of $600,000.00. In the second count of their amended Complaint plaintiffs asserted that the defendants breached an agreement made in connection with the sale and purchase, not to permit any mortgages, judgments or other liens to be placed against the property, except those which already existed, until the note was satisfied. The defendants filed a Counterclaim alleging that their discovery of certain latent defects in the property constituted a breach of warranties contained in the Agreement of Sale and Purchase, for which damages were demanded.

A jury trial was held and at its conclusion the court granted plaintiffs' motion for a directed verdict as to both Counts I and II of Plaintiffs' Complaint. The jury considered the matter of

the Counterclaim and ultimately awarded defendants $67,000. However, subsequent to the filing of post-trial motions, the court granted a Judgment N.O.V. in favor of the plaintiffs on the defendants' counterclaim. These appeals followed.

## Appeal at 2207 Pgh 94

An appeal taken by Mount Royal Associates and Ronald Reichman challenges the court's award of Judgment N.O.V., the directed verdict on Count II of the Complaint and a number of other evidentiary matters. They specifically break down their argument into the following claims:

A.   The trial court improperly granted plaintiff's motion for judgment notwithstanding the verdict on defendants' counterclaim, ignoring defendants' evidence of plaintiffs' liability

B.   The trial court erred by refusing to give defendants permission to present their counterclaim damages against plaintiffs.

   1.   Plaintiffs waived any objections to the specificity of defendants' counterclaim.

   2.   The trial court erred by failing to enforce the agreement of counsel

   3.   The trial court erred by refusing defendants' request to amend its counterclaim to include the disputed matter.

   4.   The trial court erred in not granting the defendants' request for a continuance.

C.   The trial court erred in its rulings concerning the admission of documents from the City of Pittsburgh, and the United States Department of Housing and Urban Development.

D.   The trial court erred in granting a directed verdict to plaintiffs on Count II of their Complaint.

E.   The trial court erred in impermissibly presuming harm from proof of breach of amendment of the agreement of sale and by shifting the burden of proof to defendants to show that no harm occurred.

F.   The trial court improperly permitted attorney Ronald Siegel to testify as an expert witness, even though he was

not listed as an expert and no report was attached to plaintiffs' pre-trial statement.

■ First, we will address the matter of the trial court's decision to grant a Judgment N.O.V. on the counterclaim. Appellants' counterclaim was based upon a theory that the sellers breached the Agreement of Sale and Purchase. Appellants focus on the following language of the agreement:

Seller has no knowledge of any defective condition, structural or otherwise, in the building or other improvements on the property.

Appellants sought to establish that the seller concealed a known defect, rusted beams. The jury accepted Appellants position that the plaintiff, Leonard Weisenberg, had actual knowledge of the damaged underground beams, however, the trial court concluded that the evidence offered at trial did not support that finding. The court ruled that there was nothing in the record which, even if believed, would demonstrate actual knowledge.

In support of their position that there was concealment of a known defect, Appellants point to the testimony of Frank Brace, a structural engineer. Mr. Brace was hired by Appellants to inspect the property. He testified that the grade of the soil beneath the structure was higher than was indicated on the original drawings, which created a humid atmosphere around certain steel beams. This condition caused beams to rust and deteriorate.

Appellants also point to the testimony of Daniel Stefanovich, who was hired to perform architectural services in connection with certain repair work the Appellees wished to have done at the time they purchased the apartment building from the original owner. Mr. Stefanovich admitted that steel beams embedded in dirt could rust and fail and advised the court that Mr. Weisenberg would have been told if there were steel support beams which were buried in dirt. Mr. Weisenberg, in his testimony, admitted to being present during renovation work, but denied noticing if any steel was buried in dirt.

This testimony does not support Appellants' conclusion that Appellee, Mr. Weisenberg, had actual knowledge of damaged underground beams. Mr. Weisenberg testified that he had no knowledge of any defective condition at the site at the time he sold the property to Appellants, and that any deficiencies or defects on the property were corrected prior to the sale. Mr. Stefanovich, who did testify that Weisenberg would be advised of problems, also testified that he was so advised and that all defects or deficiencies which were identified were repaired. There is nothing in the record which would indicate that Mr. Weisenberg observed himself, or was told of any defective condition which went uncorrected. Because there was not sufficient evidence to sustain the verdict, even after granting Appellants the benefit of every reasonable inference which could be drawn from the evidence, we affirm the trial court's decision to grant Judgment N.O.V. on Appellants' counterclaim. *Ingrassia Construction Company, Inc. v. Walsh*, 337 Pa.Super. 58, 486 A.2d 478 (1984).

The matters raised by Appellants which are listed as B, 1–4 and C, each concern either damages related to the counterclaim, the court's evidentiary rulings regarding documents admitted at trial, or discretionary rulings concerning the counterclaim. Because we have agreed with the trial court's decision ruling that there was insufficient evidence offered to support the counterclaim, it becomes unnecessary for us to discuss these matters.

Appellants next raise a question of whether the trial court erred in granting a directed verdict to Appellees on Count II of their Complaint. Count II contained allegations that Appellants breached the Amendment to the Agreement of Sale and Purchase when they permitted liens and/or mortgages to be placed on the Property prior to the payment of the obligation under the Note. Appellants argue that a jury question was created when Appellees failed to produce the original document. They also assert that the jury should have been asked to consider whether the document was a closing document and to resolve a conflict in the language between the Note and the Amendment.

We find no merit to Appellants' claim because the record demonstrates that there was no conflicting evidence which should have gone to the jury and that the decision to enter a directed verdict was proper. *See Beary v. Pennsylvania Electric Company,* 322 Pa.Super. 52, 469 A.2d 176 (1983). Appellants offered no evidence to contradict testimony that the Amendment was negotiated by the parties to provide security to Appellees for an unsecured debt, and that it was executed at the closing. Further, there was no real dispute as to authenticity of the document. The originals could not be produced by either side, and an executed copy was provided from the file maintained by the counsel who represented Appellees at the closing.

Regarding the claim that a conflict existed between the language of the Note and the Amendment which should have been resolved by the jury, we note that Appellants have offered a mere four sentence argument with regard to this claim. Without reference to either document, Appellants claim that they conflict because the Amendment prohibited Defendants from placing or causing to be placed any liens against the property while the Promissory Note prohibited Plaintiffs from making any claim against the subject property. According to Appellants' reasoning: "The Amendment would then only serve the purpose of protecting an unsecured interest in a piece of property that the Plaintiffs are prohibited from using as a basis to have the Note paid." Appellants' Brief at 56. The trial court found this argument to be "an absurd contention." N.T. at 1009. The court stated: "there's no way that any sensible reading of this rider bars them [Appellees] forever from getting a judgment which would eventually become a lien against the property." *Id.* at 1011. Upon review we find no fault with the court's ruling.

■ Appellants next argument, which also concerns the court's ruling with respect to Count II of the Complaint, is equally without merit. Appellants assert that the court erred by impermissibly presuming harm from a breach of the Amendment of the Agreement of Sale. They argue that Appellants were wrongly weighed with the responsibility of

showing that no harm occurred. Appellants maintain that the burden should not shift to the defendant until the plaintiff has presented evidence of damages. *Fetzer v. Vishneski*, 399 Pa.Super. 218, 582 A.2d 23 (1990).

While we do not disagree with Appellants statement of the law, we do disagree with their assessment of the case. Presented before the court was evidence that Appellants had expressly agreed not to permit mortgages or liens to be placed against the Property unless the Promissory note was paid, that the $600,000 Note was not paid and that liens were placed on the property. By virtue of this fact, the liens had a prior recorded security interest and they would be senior to any judgment obtained on the Note. From this information it was proper for the court to conclude that Appellees demonstrated that they had been damaged in an amount equal to the amount of the unpaid Note and to require Appellants to demonstrate otherwise. The court by this action with respect to Count II did not allow a separate recovery for Appellees. The court's ruling with respect to both Counts I and II permitted Appellees to recover the amount due them on the Note, plus interest.

The final question presented in this appeal concerns the testimony of Ronald Siegel, Appellee–Weisenberg's counsel at the closing. Appellants contend that he was wrongly allowed to testify as an expert witness even though he was not listed as such and no expert report was attached to Appellees pre-trial statement.

At trial Attorney Siegel was asked to describe the closing, who was present, what documents were executed. Appellants, however object to the following statement made by Siegel, which they characterize as a legal opinion on the legal effect of the amendment on the Agreement of Sale and Purchase:

> Well, it was our position that under the circumstances we would be an unsecured creditor, and if there were liens or mortgages placed on the property, then those liens or

mortgages would knock us down another notch in terms of a chance of recovering any assets.

N.T. 2/2–12/93 at 460.

Appellees counter with the argument that the testimony was an explanation for what Siegel hoped to accomplish for his clients and what the intent of the parties was when they entered into the agreement. They maintain that Siegel never was asked, nor did he volunteer, to render his legal opinion as to whether the instruments executed legally accomplished the goals of his client. The trial court accepted this reasoning and stated:

But the only reason its pertinent here is to show that, yes, at the time of closing in this attorney's view that document had a purpose, and what was that purpose. This is the purpose.

*Id.* at 430.

The court also noted that the jury could later learn from the court what the documents meant as a matter of law. *Id.* Under these circumstances we find no error with the conclusion that Attorney Siegel's testimony did not constitute a legal opinion, and we find no abuse of discretion on the part of the trial court in allowing this testimony to be heard by the jury.

In conclusion we find no merit to the issues presented in this appeal and we affirm the Judgment of the court.

### Appeal at 2208 Pgh 1994

■ By means of this appeal Appellant, Adam Kauffman, seeks to have reviewed the trial court's decision refusing to vacate a directed verdict against him. The court rejecting his claim that he was not personally responsible because he was not a general partner at the time a Promissory Note was executed on behalf of the partnership.

The Property at issue was sold in 1982 to Mount Royal Associates, a limited partnership. At that time the general partner was George Bickley, Jr. On behalf of the partnership Mr. Bickley executed an agreement to pay $1.6 million dollars, which included an unsecured $600,000 promissory note. The

Note stated that it was "due and payable on the eight anniversary of settlement. [October 29, 1990]" Provisions regarding prepayment of the Note were also included.

After the death of Mr. Bickley, Kauffman became the general partner on June 13, 1988. On October 24, 1990 Kauffman executed a document entitled "Certificate of Amendment—Limited Partnership" withdrawing as the general partner and appointing Ronald Reichman as the general partner. It was filed with the Commonwealth on November 2, 1990.

As stated in discussion with the appeal brought at No. 2207 Pgh 1994, plaintiffs instituted suit when the Note was not paid by the Partnership on or before October 29, 1990. After the court directed a verdict in favor of the plaintiffs on counts I and II and against Kauffman individually, as well as the other defendants, Kauffman filed post-trial motions. He requested that the court vacate the directed verdict against him since he was not a general partner at the time the Note was executed. The trial court rejected this request.

At the heart of this issue is an interpretation of the Partnership Code, particularly § 8329. 15 Pa.C.S.A. § 8329. It provides:

**§ 8329. Liability of incoming partner**

A person admitted as a partner into an existing partnership is liable for all the obligations of the partnership arising before his admission as though he had been a partner when the obligations were incurred except that this liability shall be satisfied only out of partnership property.

The trial court was asked to answer the question of whether this section imposes liability on Kauffman which is to be satisfied only out of partnership property because the obligation on which it is founded arose before his admission, or whether the liability may be satisfied by his personal assets. The court accepted the later interpretation urged by Appellees. The court concluded that the obligation did not arise when the Note was made, but rather it "arose" on October 29, 1990, the date the Note was payable. On this date, Kauffman

was a general partner[1] and, according to the trial court's reasoning, he became personally liable.

We cannot accept the trial court's interpretation of § 8329. This provision was clearly designed to limit satisfaction of liability for any new partners who come into a partnership after the partnership has incurred an obligation. While these individuals remain liable for partnership obligations which arose before that person's admission to the partnership, their liability can only be satisfied out of partnership property. In an effort to expand this liability under the facts of this case, Appellees argued to the trial court, that the debt in this case did not arise until it became due. The court accepted the reasoning that the obligation did not arise until this time since plaintiff had no right to seek payment or take any action under the Note until the date the Note became payable. The words of the statute, however, are clear and unambiguous. The statute does not speak in reference to a time when a debt becomes due, rather it specifically refers to obligations which arose before the partner's admission. The obligation in this case arose when the partnership agreed to pay a fixed sum in return for the property. As of that date there was created an obligation on the part of the partnership. The fact that payment of this obligation was not due until a later date has nothing to do with the time when the obligation arose.

Appellant points out that the trial court's interpretation of this statute would create an absurd result. We agree. A creditor, when deciding whether to extend credit to a partnership, ordinarily looks at the financial security of the partnership and the existing financial partners. The ability of future partners to satisfy the obligation cannot be contemplated and would play no part in the creditor's decision. Further, acquiring new investors for a partnership would be much more difficult if they were not protected by the limited liability of § 8329. An individual would not want to expose themselves to

1. Kauffman's withdrawal as a general partner was not effective until November 2, 1990, the date the Certificate of Amendment was filed with the Commonwealth of Pennsylvania Department of State. *See* 15 Pa.C.S.A. § 8512(e).

personal liabilities for obligations which the partnership incurred before they joined the partnership.

In sum, we find the plain reading and purpose behind § 8329 to be clear and we conclude that Appellant, Adam Kauffman, cannot be held personally liable for payment of the obligation created by the partnership. For this reason we reverse the trial court's order which allows any judgment against Appellant to be satisfied from assets other than partnership assets and we vacate the Judgment entered against him.

Judgment against Adam Kauffman, personally, vacated.