## Thousand Dollar Club v. Krispinsky

394

C.P. of Mercer County, no. 1998-209.

*William G. McConnell Jr.,* for plaintiff.
*Peter C. Acker,* for defendant Krispinsky.
*Stanley Yorsz,* for defendant IRM Distributors.
*Michael A. Joanow,* for additional defendant Steklachick.
*Mark Frankovich,* additional defendant, pro se.
*Frank P. Frankovich,* additional defendant, pro se.
*Bernard A. Rich,* additional defendant, pro se.

DOBSON, *J.,* July 13, 2000—The matters before the court for disposition are defendant IRM Distributors'

motion for judgment on the pleadings, defendant Bernard Krispinsky's motion for partial judgment on the pleadings, additional defendants Frank Frankovich, Mark Frankovich, Bernard Rich and John Steklachick's preliminary objections to joinder pursuant to defendant Krispinsky's Rule 2252(d) new matter, and additional defendant Bernard Rich's addendum to the preliminary objections. Oral argument was heard before this court on May 1, 2000. As this is the third opinion this court has issued in this case, rather than repeat the facts and procedural history, the court incorporates and sets forth the facts and procedural history from its opinion of August 31, 1999 as follows:

"The procedural history of this case is as follows. A complaint was filed on January 20, 1998 in the names of 28 individual plaintiffs. The plaintiffs were members of one or more of three different investment clubs created by defendant Bernard Krispinsky. The complaint included three counts of fraudulent misrepresentation and three counts of breach of fiduciary duty, one for each of the clubs; one count of breach of contract, one count of negligence, and one count of punitive damages, brought by the members of the clubs collectively; and one count of misrepresentation brought by plaintiff Bernard Rich only.

"Defendant filed preliminary objections. After hearing oral argument on April 6, 1998, this court issued an order striking the complaint and the count of punitive damages and granting leave to amend. The court instructed the plaintiffs as to how any amended complaint should be re-pled.

"An amended complaint was filed on July 24, 1998. The plaintiffs were changed from the individual mem-

bers to the three investment clubs[1] by their trustees ad litem. Each club brought a separate count of breach of fiduciary duty, fraud, violation of the Pennsylvania Securities Act, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, negligence, and breach of contract.

"Defendant again filed preliminary objections, and oral argument was heard on October 5, 1998. On December 22, 1998, the court issued an order striking counts 4-9 and 16-18, and sub-paragraph 69(h) and granting leave to amend.

"A second amended complaint was filed on February 5, 1999. The caption now listed as plaintiff the Thousand Dollar Club by its trustees ad litem. The complaint included counts of fraud, breach of fiduciary duty, negligence, and breach of contract.

"On March 19, 1999, plaintiff was granted leave to file a third amended complaint to add party-defendant IRM Distributors. The third amended complaint was filed on March 26, 1999, defendants now being Bernard Krispinsky and IRM Distributors.

"This complaint includes counts of fraud, breach of fiduciary duty, negligence, and breach of contract against Bernard Krispinsky and one count of negligence against IRM Distributors. . . .

"This case arose from a dispute between plaintiffs, the members of the Thousand Dollar Club, a private investment club, and its founder and organizer, defendant Bernard Krispinsky. The third amended complaint avers that in November of 1995, defendant initially solicited 24 individuals, the plaintiffs, to invest $1,000 each for mem-

---

1. The Thousand Dollar Club, Invest for Five, and Wildcats.

bership in the Thousand Dollar Club. (Third amended complaint ¶5.) An organizational meeting was held, by-laws were approved, and defendant was appointed funds director and was made responsible for investing the club's assets. (*Id.* at ¶8-9.) It was agreed that the plaintiffs would pay an additional $25 dollars per month as dues. (*Id.* at ¶9.) Defendant was given a free membership in the club as compensation for his services as funds director. (*Id.*)

"From December 1995 to February 1997, defendant prepared and handed out monthly statements reviewing the status of the club's accounts and assets. (*Id.* at ¶21.) From March 1997 to October 1997, defendant did not prepare written monthly statements, but orally reported the status of the accounts and assets to the plaintiffs. (*Id.* at ¶23.) In November 1997, defendant was terminated as funds director. (*Id.* at ¶29.) The termination was based on a number of alleged acts of wrongdoing by defendant with regard to the club accounts and assets resulting in substantial monetary loss to the plaintiffs. (*Id.* at ¶29-30.)"

The first matter to be addressed is Krispinsky's motion for partial judgment on the pleadings. "A motion for judgment on the pleadings may be granted only in cases where no facts are at issue and the law is so clear that a trial would be a fruitless exercise. . . . In addition, the court must view all well-pled facts of the non-moving party as true . . . ." *Beardell v. Western Wayne School District,* 91 Pa. Commw. 348, 353, 496 A.2d 1373, 1375 (1985). (citations omitted)

Krispinsky makes several arguments in his motion for partial summary judgment; we will address them seriatim. Krispinsky first asks that the averments of his new matter and Rule 2252(d) new matter as they pertain to

plaintiff Thousand Dollar Club be deemed admitted, because plaintiff has not responded in a timely fashion. This court's order of December 29, 1999 granted plaintiff 10 days within which to file a reply to new matter. Plaintiff filed its reply that same day, thus the issue has been resolved.

Krispinsky next asks that the court enter judgment against the 28 original plaintiffs as well as original plaintiff Bernard Rich, because they failed to file amended complaints after the original complaint was stricken. The order of April 6, 1998 found that the causes of action were individual and could not be consolidated into one count as originally plead. The court struck the complaint, including Rich's individual cause of action, and directed plaintiffs to file amended complaints within 60 days. When the original complaint was stricken, the 28 original plaintiffs and Rich were dismissed as parties, thus judgment cannot be entered against them.

A first amended complaint was properly filed in the names of the three clubs by their trustees ad litem.[2] The court's order of December 22, 1998 did not strike the amended complaint, but directed the Thousand Dollar Club to amend within 45 days, and directed Invest for Five and Wildcats to file separate complaints. Invest for Five and Wildcats were effectively dismissed as parties by the order of December 22, 1998, thus judgment cannot be entered against them.

Krispinsky next claims that some of plaintiff's allegations are barred by the statute of limitations. Plaintiff's

---

2. The court concluded in its opinion and order of December 22, 1998 that the action was properly brought by the associations and not the club members individually.

causes of action are based upon Krispinsky's actions occurring between November 1995 and November 1997. The original complaint was filed January 20, 1998.

A two-year statute of limitations applies to the counts of fraud, breach of fiduciary duty and negligence. 42 Pa.C.S. §5524 (Supp. 2000); *Maillie v. Greater Delaware Valley Health Care Inc.,* 156 Pa. Commw. 582, 628 A.2d 528 (1993); *Walls v. Scheckler,* 700 A.2d 532 (Pa. Super. 1997). The breach of contract claim alleges the breach of an oral contract and is covered by a four-year limitation period. 42 Pa.C.S. §5525 (Supp. 2000); *Packer Society Hill Travel Agency Inc. v. Presbyterian University of Pennsylvania Medical Center,* 430 Pa. Super. 625, 635 A.2d 649 (1993). "There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitations." *Kingston Coal Co. v. Felton Mining Company Inc.,* 456 Pa. Super. 270, 278, 690 A.2d 284, 288 (1997).

"[T]he statute of limitations begins to run as soon as the right to institute and maintain suit arises; . . . ." *Id.* (quoting *Pocono International Raceway v. Pocono Produce,* 503 Pa. 80, 468 A.2d 468 (1983)). An exception to this general rule exists, however, "[w]here, 'through fraud or concealment, *the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry.'"* *Id.,* 456 Pa. Super. at 283, 690 A.2d at 290 (quoting *Molineux v. Reed,* 516 Pa. 398, 532 A.2d 792 (1987)). "The defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." *Id.,* 456 Pa. Super. at 284, 690 A.2d at 291. "Mere mistake, misunderstanding or lack of knowledge is insufficient . . . and the burden of prov-

ing such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." *Id.,* 456 Pa. Super. at 283-84, 690 A.2d 290-91.

The third amended complaint avers that Krispinsky was appointed funds director and was responsible for controlling and investing the club's funds in the club's Charles Schwab & Co. trading account. Although Krispinsky was receiving monthly account statements from Schwab that accurately reflected the status of the account, he did not provide the club with copies of the statements. Instead, Krispinsky personally prepared 15 monthly account statements that he handed out to the members at club meetings between December 1995 and February 1997. Between March 1997 and October 1997, he orally informed the members of the account status. The club members aver they relied upon Krispinsky's oral and written representations and continued to entrust him with club funds.

Viewing, as we must, these facts as true, it is clear that Krispinsky committed an affirmative act of concealment "upon which the plaintiff justifiably relied." Krispinsky was the founder and organizer of the club. From the beginning, the club trusted him to control and invest its assets. According to his oral and written representations, the investments were successful. "Since [the members] had no reason to make investigation, they are not chargeable with what such investigation would have disclosed." *Rush v. Butler Fair & Agricultural Association,* 391 Pa. 181, 186, 137 A.2d 245 (1958). Thus, the statute is tolled and "defendant is estopped from invoking the bar of the statute of limitations." *Kingston,* 456 Pa. Super. at 283, 690 A.2d at 290.

Krispinsky next claims that he is entitled to judgment on the amount allegedly owed to club member Peter Cominos, because Krispinsky has paid Cominos $1,600 as a compromise to settle the claim. While Krispinsky's claim may be true, it is not a basis for an award of judgment on the pleadings. There are no facts of record regarding whether the Cominos claim was settled. Thus whether Cominos may recover from Krispinsky remains a question of fact to be resolved by the fact-finder.

Krispinsky next claims that plaintiff's claims based upon allegations of unauthorized option and margin trading are barred, because Krispinsky was authorized by the club to conduct both option and margin trading.[3] The Schwab trade account authorization permits Krispinsky to "buy, sell and trade in stock, bonds, options, and any other securities, listed or unlisted, on margin or otherwise . . . ." Although the authorization appears to have been executed by several members of the club, plaintiff, in its reply to Krispinsky's new matter, denies that the authorization was valid. Plaintiff alleges that Krispinsky misrepresented the nature of the document that the members were asked to sign. Plaintiff's reply to defendant Krispinsky's new matter ¶103. Hence, whether the authorization was valid and authorized Krispinsky to conduct option and margin trading is a question of fact to be resolved by the fact-finder. Krispinsky next claims that he is entitled to partial judgment on the pleadings, because the wrongdoing of the club's officers is imputed to the club. See *Plasterer v. Paine,* 375 Pa. Super. 407, 544 A.2d 985 (1988). Krispinsky claims that the club's

---

3. The Schwab trading account authorization is attached to the first amended complaint as exhibit A.

officers failed to perform their duties as set forth in the bylaws, and, because of their breach of duty, they failed to discover Krispinsky's alleged misrepresentations. Further, this failure to discover the misrepresentations was a substantial factor in the club's losses. While it is true that the officers' conduct may be imputed to the club, whether the officers' conduct was wrongful and contributed to the club's losses are questions of fact to be resolved by the fact-finder.

Krispinski next claims that many of the causes of action asserted in the third amended complaint are not cognizable.[4] Krispinsky argues that all claims based upon his failure to utilize a conservative investment policy must fail, because his five avenue investment philosophy, third amended complaint ¶11, includes the purchase of speculative issues such as initial public offerings and equity options that are not, by nature, conservative. Whether these issues are speculative and would defeat claims based upon a conservative investment policy is a question of fact to be resolved by the fact-finder.

Krispinsky next claims that plaintiff's claims based upon his purchase of securities on margin must fail, because an analysis of the reports he prepared must lead to the conclusion that the securities were purchased on margin. Whether the reports were clear and would lead to that conclusion and whether the members were responsible for reaching that conclusion based upon the information provided to them is a question of fact.

---

4. Krispinsky re-asserts the claims set forth in his preliminary objections in the form of a demurrer to the third amended complaint. In its opinion and order of August 31, 1999, the court determined that these claims constituted defenses and were not proper as a basis for preliminary objections.

Krispinsky next claims that paragraph 32 of the third amended complaint alleging fraudulent misrepresentation is factually insufficient and, therefore, legally insufficient. Paragraph 32 reads as follows:

"That prior to the initial investment of the club's assets in November 1995, Krispinsky willfully, wantonly, intentionally and fraudulently orally misrepresented to the club and its members that he would invest the club's assets by utilizing a specific, 'conservative,' 'long-term' (15 year) 'five avenue investment philosophy,' when, in fact, Krispinsky's investment of the club's assets throughout his entire tenure as funds director was not done in either a 'conservative' and/or 'long-term' manner under any reasonably accepted definition of these terms."

Krispinsky represented to the club that he would follow a conservative investment philosophy. Third amended complaint ¶¶32, 10, 11, and both he and the club members agreed to this investment philosophy. *Id.* at ¶¶10-11. The club was not aware that Krispinsky was purchasing securities on margin. *Id.* at ¶¶12, 33, 34(a). Krispinsky continued to misrepresent the manner in which club funds were invested and that the investments were profitable. *Id.* at ¶¶33-36. The club relied on Krispinsky's representations and continued to entrust him with club funds. *Id.* at ¶38. Paragraph 32, when read in conjunction with other paragraphs, therefore, is factually sufficient.

Krispinsky next claims that plaintiff's cause of action for fraudulent misrepresentation is not cognizable, because the "total" on Krispinsky's handwritten reports is not meant to equal the "total account value" on the Schwab reports, rather the handwritten "total" more closely approximates the "investments owned" as listed

on the Schwab reports. Krispinsky contends that his reports were not false, they were read incorrectly, and there are no facts averred to support the claim that Krispinsky's "total" should equal Schwab's "total account value." Krispinsky is correct that that it is unclear from the facts plead and the exhibits what Krispinsky's "total" is meant to represent. Whether plaintiff's claim of fraudulent misrepresentation will stand depends upon what Krispinsky's "total" represents. This is a factual question to be resolved by the fact-finder.

Krispinsky next claims that paragraph 34 of the third amended complaint "fails to state a cognizable claim because it alleges that the Krispinsky generated reports' content materially differs from the content of the corresponding monthly Schwab accounts." The Schwab reports are dated and contain information gathered from the first to the last day of a particular month. Krispinsky's reports, for the most part, are not dated with a specific date. Therefore, it is impossible to determine whether the information contained in the reports is fraudulent. It is unknown whether the reports are meant to cover the same time periods. Whether the information in Krispinsky's reports is true or false, and therefore fraudulent, is a question to be resolved by the fact-finder.

The court agrees with Krispinsky, however, that paragraph 34(h) cannot be the basis of an action for fraudulent misrepresentation, because it avers an omission as opposed to a representation. Paragraph 34(h) provides, in part, that "Krispinsky's July 1996 statement was false and misleading as it failed to report his sale . . . of 500 shares of Iomega at a loss . . . on margin . . . ." A false representation is necessary to support a cause of action for fraudulent misrepresentation, *Bortz v. Noon,* 556 Pa.

489, 729 A.2d 555 (1999), thus paragraph 34(h) is factually insufficient and must be stricken.

Krispinsky next claims that plaintiff improperly calculated the damages requested in Count I. "The rules for determining the measure of damages in tort are based upon the purposes for which actions of tort are maintainable. These purposes are: (a) to give compensation, indemnity or restitution for harms; (b) to determine rights; (c) to punish wrongdoers and deter wrongful conduct; and (d) to vindicate parties and deter retaliation or violent and unlawful self-help." Restatement (Second) of Torts §901 (1979). "When there has been harm only to the pecuniary interests of a person, compensatory damages are designed to place him in a position substantially equivalent in a pecuniary way to that which he would have occupied had no tort been committed." Restatement (Second) of Torts §903, comment (a) (1979).

Count I alleges fraud and resulting money damages. Plaintiff calculated its damages as "the difference between the total amount of the club's assets entrusted to Krispinsky for investment, less the balance remaining in the [club's] account upon discovery of Krispinsky's fraud, plus monies paid to Krispinsky for seminar expenses. . . ." Third amended complaint ¶41. An award of damages calculated in this manner would return plaintiff, as nearly as possible, to the position it would have occupied had no tort been committed. Plaintiff's calculation of damages is proper.[5]

Krispinsky next claims that plaintiff's cause of action for breach of fiduciary duty based upon Krispinsky's options trading is not cognizable, because trading in op-

---

5. This reasoning also applies to the calculation of damages in Counts II (breach of fiduciary duty) and Count III (negligence).

tions was part of the agreed upon "Five avenue investment philosophy." Although option trading may have been part of the investment philosophy, whether the high risk and speculative option trading conducted by Krispinsky was contemplated by the club when the "conservative" investment philosophy was agreed upon is a question of fact.

Krispinsky next claims that he had no duty to provide the club members with monthly information, therefore plaintiff's cause of action for breach of fiduciary duty is not cognizable. He further claims that if a duty existed, it was to the club as principal, and not to the individual members.

This court has already held in its opinion and order of December 22, 1998 that a principal-agent relationship existed between Krispinsky and plaintiff and that Krispinsky had fiduciary duties to plaintiff that arose from that relationship. In a principal-agent relationship "[e]ither of the parties to the relation may be a natural person, groups of natural persons acting for this purpose as a unit such as a partnership, joint undertakers, or a legal person, such as a corporation." Restatement (Second) of Agency §1, comment on subsection (1):(a) (1958). An unincorporated association is "a body of individuals acting together for the prosecution of a common enterprise . . . ." *Selected Risks Insurance Co. v. Thompson,* 520 Pa. 130, 137, 552 A.2d 1382, 1385 (1989). Thus, an unincorporated association may operate as a principal in a principal-agent relationship.

An unincorporated association, however, "is not a legal entity; it has no legal existence separate and apart from that of its individual members." *Krumbine v. Lebanon County Tax Claim Bureau,* 541 Pa. 384, 388, 663

A.2d 158, 160 (1995). Though an association may be sued in its own name as a separate legal entity, this status is only accorded for purposes of a lawsuit,[6] otherwise the association does not exist apart from its members. Krispinsky had a duty to provide information "relevant to the affairs entrusted to him,"[7] and this duty was to the members that comprise the association.[8]

Finally, Krispinsky claims that the measure of damages set forth in paragraph 60 of Count IV of the third amended complaint is incorrect. Count IV alleges breach of contract and requests damages "representing the difference between the total amount of club's assets entrusted to Krispinsky for investment, less the balance remaining in the [club's] account upon discovery of Krispinsky's breaches and violations." Third amended complaint ¶60.

Remedies for breach of contract "are designed to protect either a party's expectation interest 'by attempting to put him in as good a position as he would have been had the contract been performed, that is, had there been no breach;' his reliance interest 'by attempting to put him back in the position in which he would have been

---

6. *Krumbine,* 541 Pa. at 388 n.2, 663 A.2d at 160 n.2; Pa.R.C.P. 2153; 42 Pa.C.S.

7. Restatement (Second) of Agency §381 (1958).

8. Additionally, Krispinsky has always dealt with plaintiff as a group of individuals as opposed to a single entity. The individual members met with Krispinsky and discussed and approved an investment philosophy. Each member was called upon to sign the Schwab trade account authorization. Krispinsky then took it upon himself to provide to the individual members monthly information pertaining to the club's investments. Krispinsky is estopped from arguing that the club is a single entity as opposed to a group of individuals to whom he owes no duty.

had the contract not been made;' or his restitution interest '[by requiring] the other party to disgorge the benefit he has received by returning it to the party who conferred it.' " *Trosky v. Civil Service Commission, City of Pittsburgh*, 539 Pa. 356, 363, 652 A.2d 813, 817 (1995) (quoting Restatement (Second) of Contracts §344). (brackets in original)

It would be impossible to calculate damages based upon plaintiff's expectation interest. There is no way of knowing what plaintiff's position would have been had the contract been performed. There also cannot be an award based upon plaintiff's restitution interest. Restitution is designed to prevent unjust enrichment, which is not present in this case.

Plaintiff's calculation of its measure of damages is proper based upon its reliance interest. An award of the amount entrusted to Krispinsky minus the balance remaining when the breach was discovered would place plaintiff in the position it would have been in had the contract not been made.

The next matters to be addressed are additional defendants' preliminary objections in the form of a demurrer to Krispinsky's Rule 2252(d) new matter. Additional defendants first argue that their joinder was improper pursuant to Rule 2252(d), because they are not parties to this action. Rule 2252(d) provides:

"If the person sought to be joined is a party, the joining party shall, without moving for severance or the filing of a praecipe for a writ or a complaint, assert in the answer as new matter that such party is alone liable to the plaintiff or liable over to the joining party or jointly or severally liable to the plaintiff or liable to the joining

party directly setting forth the ground therefor. . . ."
Pa.R.C.P. 2252(d); 42 Pa.C.S. (Supp. 2000).

As explained above, the 28 original plaintiffs were dismissed as parties when the original complaint was stricken by the order of April 6, 1998. The additional defendants were included in that group of original plaintiffs, and were dismissed as parties, therefore Mark Frankovich and John Steklachick are not parties to this action and were not joined properly. Additional defendants Bernard Rich and Frank Frankovich, however, are named as trustees ad litem, bringing the action on behalf of the club.[9] Bernard Rich and Frank Frankovich are parties to the action and were properly joined by Krispinsky's Rule 2252(d) new matter.

The additional defendants also argue that they cannot be joined because the allegations against them are separate and distinct from the allegations against Krispinsky. Krispinsky has alleged a duty on the part of additional defendants, as officers of the club, to properly run the affairs of the club, properly preside over meetings, provide members with information which is relevant to the affairs entrusted to him, and to supervise other officers. If true, Rich and Frankovich's failure to perform these duties would make them jointly liable with Krispinsky. Their breach of duty resulted in their failure to discover Krispinsky's wrongful actions, which enabled it to continue. They also failed to provide relevant and correct information to the club members.

The next matter before the court is additional defendant Rich's addendum to additional defendants' preliminary objections to Rule 2252(d) new matter. Krispinsky's

9. See Pa.R.C.P. 2152.

Rule 2252(d) new matter was filed on October 12, 1999. Rich did not file his preliminary objections until January 3, 2000. Pursuant to Rule 1026, preliminary objections must be filed within 20 days of service of the preceding pleading.[10] Pa.R.C.P. 1026; 42 Pa.C.S. (1987). Rich's preliminary objections are untimely and will be overruled.

It is possible that Rich did not intend his preliminary objections to be a separate pleading, but rather an amendment to the previously filed preliminary objections. If so, they were filed in violation of Rule 1033 which allows for amendment of pleadings only by leave of court or filed consent of the adverse party, neither of which exists. Pa.R.C.P. 1033; 42 Pa.C.S. (1987).

The final matter before the court is defendant IRM's motion for judgment on the pleadings. IRM argues that it cannot be held liable for Krispinsky's tortious acts done for his own benefit, outside the scope of his authority, and from which IRM gained no benefit. IRM cites *Cover v. Cushing Capital Corp.*, 344 Pa. Super. 593, 497 A.2d 249 (1985) in support.

In *Cover,* Carl Fugh, an associate of Investors Security, agreed to invest money for plaintiff and others in exchange for payment. Some time later, he also began to solicit investments in commercial paper. He gave the investors handwritten receipts in his own name, not in the name of Investors Security, and deposited the money

---

10. At the time of the filing of the Rule 2252(d) new matter, additional defendants were represented by attorney William McConnell Jr. Attorney McConnell filed preliminary objections to the new matter on behalf of the additional defendants on October 29, 1999. We may infer that attorney McConnell was served with a copy of Krispinsky's answer and new matter some time prior to October 29, 1999.

into his personal account. The investors knew Fugh was associated with Investors Security. Investors Security later ceased doing business and Fugh became associated with Cushing Capital Corporation as a registered representative authorized to sell mutual funds and stocks, but not commercial paper. Fugh told the investors that he had changed his affiliation to Cushing Capital and that he was continuing to work for the investors in his private capacity.

Cushing Capital was unaware of Fugh's activities. No money was given to Cushing Capital and no receipts were given to the investors by Cushing Capital. None of the investors inquired of either Investors Security or Cushing Capital regarding the money given to Fugh.

Subsequently, the investors discovered that Fugh had not invested the money, but had converted it to his own use. They then commenced an action against Fugh and Cushing Capital. Judgment was entered against Fugh, but the trial court held that Cushing Capital was not liable for the investors' losses.

The Superior Court affirmed. The court upheld the trial court's finding that the investors "had no accounts with Cushing Capital and that Cushing Capital had no knowledge that [the investors] were giving Fugh money to invest for them, and no knowledge of the amounts so paid. Fugh's scheme was entirely extracurricular, and Cushing Capital was not aware of it." *Cover,* 344 Pa. Super. at 598, 497 A.2d at 252.

Based upon these facts, the court held that "where an agent acts in his own interest which is antagonistic to that of his principal, or commits a fraud for his own benefit in a matter which is beyond the scope of his actual or apparent authority or employment, the principal who has

received no benefit therefrom will not be liable for the agent's tortious act." *Id.* Thus, "Cushing Capital was not obligated to answer vicariously for the losses sustained as a result of Fugh's peculations." *Id.* at 599, 497 A.2d 253.

In the instant case, plaintiff has not averred that Krispinsky was acting as an agent/representative of IRM in his capacity as funds director of the club.[11] As in *Cover,* he prepared written reports for the investors/club members. He did not claim to be working as an agent/representative of IRM. The club members did not receive statements or reports of any kind from IRM, nor did they contact IRM regarding their investments. It is also not averred that IRM received any benefit from Krispinsky's actions.

To hold that IRM had a duty to supervise Krispinsky in actions conducted outside of his capacity as agent/representative of IRM and that IRM breached this duty by failing to supervise and discover and/or prevent Krispinsky's tortious conduct would result in IRM improperly being held liable for that conduct. As in *Cover,* Krispinsky was acting in his own interest, for his own benefit, and not as an agent or representative of IRM, thus IRM had no duty to supervise.

Hence, this order:

## ORDER

And now, July 13, 2000, it is hereby ordered that defendant Bernard Krispinsky's motion for partial judg-

---

11. Also, the court has already held in its opinion of August 31, 1999 that Krispinsky was not acting as a broker in this case, though he was licensed as a broker by IRM.

ment on the pleadings is granted as to paragraph 34(h) of the third amended complaint, and denied in all other respects.

It is further ordered that additional defendants' preliminary objections to defendant Krispinsky's Rule 2252(d) new matter are sustained as to additional defendants Mark S. Frankovich and John A. Steklachick, and overruled in all other respects.

It is further ordered that additional defendant Bernard Rich's addendum to additional defendants' preliminary objections to Krispinsky's Rule 2252(d) new matter is overruled.

It is further ordered that defendant IRM Distributors' motion for judgment on the pleadings is granted.