690 A.2d 284

**KINGSTON COAL COMPANY, a Corporation, Appellant,**

**v.**

**FELTON MINING COMPANY, INC., a Corporation, Clifford Felton, Kingston Veterans' and Sportsmens' Club, a Corporation, and Robert H. Malloy, Donald M. Johnston, Joseph Yarchak, Richard Lieberman, and Kevin Coleman, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 30, 1997.

Filed Feb. 21, 1997.

274

---

Thomas J. Madigan, Pittsburgh, for appellant.

Ronald J. Bergman, Greensburg, for Felton Mining Co., and Clifford Felton, appellees.

James E. Kelley, Jr., Latrobe, for Kingston Veterans and Sportmens' Club, Malloy, Johnston, Yarchak, Lieberman and Coleman, appellees.

Before TAMILIA, SAYLOR and SCHILLER, JJ.

SAYLOR, Judge:

In this action involving the conversion of minerals, Kingston Coal Company (Appellant) has appealed from an order entered on July 16, 1996, in the Westmoreland County Court of Common Pleas granting summary judgment in favor of Felton Mining Company, Inc., Clifford Felton, Kingston Veterans' and Sportsmens' Club, Robert H. Malloy, Donald M. Johnston, Joseph Yarchak, Richard Lieberman, and Kevin Coleman (Appellees). We affirm.

In February of 1979, the Kingston Club and Felton Mining executed an undated lease agreement in which the former granted to the latter the right to "mine, remove and sell all of the coal" underlying certain portions of the Kingston Club's land. The lease provided that Felton Mining would pay the Kingston Club a royalty of $1.25 for each ton of coal it removed. Further, the lease provided that Felton Mining would perform land reclamation activities on some previously mined areas of Kingston Club's property. At the time it entered into the lease, the Kingston Club was unsure as to who owned the coal estate underneath its property.

Thereafter, Felton Mining applied for, and obtained, a coal mining permit from the Pennsylvania Department of Environmental Resources (DER), as required by law. In the application, Felton Mining averred that the coal in question was owned by the Kingston Club. On November 14, 1980, Joseph Yarchak, who was Financial Secretary of the Kingston Club at that time, learned that the coal estate was most likely owned by a local attorney, Harold Stewart. Thereafter, Yarchak notified James Kelley, the Kingston Club's attorney, of this information.

In turn, Kelly advised Felton Mining, in a hand-carried letter, that the Kingston Club was uncertain about the coal's

ownership. The letter recommended, but did not demand, that the mining operations at issue cease until the coal's ownership was established. Despite this new information, the mining operation continued on the Kingston Club's land without interruption. Had a title search been performed at this time, Appellees would have learned that the coal was actually owned by Harold Stewart and Inez Doberneck. The DER was never notified of any uncertainty as to the coal's ownership, and Stewart was never contacted regarding the mining operation.

The coal mining activity at issue took place between November 1980 and May 1981, and the land reclamation project was pursued from 1981 to 1986. At the conclusion of the endeavor, Felton Mining had removed over 26,000 tons of coal from the Kingston Club's property and the Kingston Club had received $32,000.00 in royalties from the mined coal, plus the value of its reclaimed land.

In the first half of 1993, the ownership rights to the coal estate underlying the Kingston Club's land were transferred to Appellant, a corporation known as Kingston Coal Company. Later in that year, Kingston Coal learned that its coal had previously been mined by Appellees. On June 17, 1994, Appellant filed a complaint against Clifford Felton, Felton Mining and the Kingston Club, stating claims for conversion and civil conspiracy incidental to the conversion.

On March 31, 1995, Appellant filed an amended complaint against the Kingston Club in which it asserted a conversion claim and an unjust enrichment claim; the complaint also named as defendants various officers of the Kingston Club (Robert H. Malloy, Donald M. Johnston, Joseph Yarchak, and Richard Lieberman) and an employee of the Commercial Equity Management Corporation (Kevin Coleman). Commercial Equity Management Corporation and Penn–Laurel Associates, Inc. were joined as additional defendants by Appellees Felton and Felton Mining, but were never served; both are now presumed to be out of business.

Each of the Appellees moved for summary judgment asserting that Appellant's conversion action was barred by the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(3).[1] The trial court granted summary judgment in Appellees' favor, whereupon, Appellant filed this timely appeal.

On appeal, the issues for our review are as follows:

(1) Whether the trial court erred by holding that the discovery rule exception to the statute of limitations was inapplicable to this case?

(2) Whether the trial court erred by concluding that Appellees' intentional misrepresentation to the Department of Environmental Resources, in applying for a mining permit, was not an independent, affirmative act of concealment sufficient to toll the statute of limitations in this action?

We will address these issues *seriatim*.

Initially, we note our well-established standard in reviewing the grant of summary judgment, as follows:

On review of an order granting summary judgment, we must determine whether the moving party has established that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. In making this determination, we must examine the record in the light most favorable to the non-moving party, who is entitled to the benefit of all reasonable inferences. All doubts as to the existence of a factual dispute must be resolved in favor of the non-moving party and the entry of summary judgment is appropriate only in the clearest of cases.

*Brooks v. Sagovia*, 431 Pa.Super. 508, 511, 636 A.2d 1201, 1202 (1994) (citations omitted). "Summary judgment may properly be entered in favor of a defendant when the plaintiff's cause of action is barred by the statute of limitations." *Colonna v. Rice*, 445 Pa.Super. 1, 4, 664 A.2d 979, 980 (1995), *alloc.*

---

1. It is well-settled that the statute of limitations for conspiracy is the same as that for the underlying action which forms the basis of the conspiracy. *Ammlung v. City of Chester*, 494 F.2d 811, 814–815 (3d. Cir.1974).

*denied,* 544 Pa. 599, 674 A.2d 1065 (1996), quoting *Brooks v. Sagovia, supra.*

■ First, Appellant contends that the trial court erred in concluding that this cause of action was barred by the statute of limitations. The time period within which a litigant must file an action for conversion is delineated in 42 Pa.C.S.A. § 5524(3), which provides that "[a]n action for taking, detaining, or injuring personal property, including actions for specific recovery thereof," must be commenced within two years of the taking or injury. There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitations. *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 458, 622 A.2d 1388, 1393 (1993). Statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience. *See Anthony v. Koppers Co., Inc.,* 284 Pa.Super. 81, 106–107, 425 A.2d 428, 441 (1980), *rev'd on other grounds,* 496 Pa. 119, 436 A.2d 181 (1981).

> As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period. Thus, the statute of limitations begins to run as soon as the right to institute and maintain suit arises; lack of knowledge, mistake, or misunderstanding do not toll the running of the statute of limitations. . . .

*Pocono Intern. Raceway v. Pocono Produce,* 503 Pa. 80, 84, 468 A.2d 468, 471 (1983) (citations omitted).

However, there are exceptions to the general rule. One such exception is a plaintiff's complete inability, due to facts and circumstances not within his control, to discover an injury despite the exercise of due diligence. This exception, known as the "discovery rule," was first enunciated by our Supreme Court in a coal conversion action, *Lewey v. H.C. Fricke Coke Co.,* 166 Pa. 536, 31 A. 261 (1895). It has since been applied to

many different types of actions. *See Anthony v. Koppers Co., Inc., supra.,* 284 Pa.Super. at 89, 425 A.2d at 436.

In moving for summary judgment, Appellees contended, and the trial court agreed, that the two-year statute of limitations applicable to a conversion action barred Appellant's maintenance of this suit. In defending against the motion, Appellant claimed that the "discovery rule" announced in *Lewey* tolled the statute from running until the injury was actually discovered.

■■ On appeal, Appellant argues that summary judgment was erroneously granted to Appellees because there exists a genuine issue of material fact as to whether, in the exercise of due diligence, discovery of the conversion was reasonably possible before expiration of the statutory period. The question of due diligence in discovering an injury, as it relates to a statute of limitations defense, is usually one for a jury's consideration. *Citsay v. Reich,* 380 Pa.Super. 366, 371, 551 A.2d 1096, 1099 (1988). However, where the facts are so clear that reasonable minds cannot differ as to whether the plaintiff should reasonably be aware that he has suffered an injury, the determination as to when the limitations period commences may be made as a matter of law. *E.J.M. v. Archdiocese of Philadelphia, supra.,* 424 Pa.Super. at 455, 622 A.2d at 1391.

■■ As this Court recently noted:

The "discovery rule" provides that where the existence of the injury is not known to the complaining party and such knowledge cannot *reasonably be ascertained* within the prescribed statutory period, the limitations period does not begin to run until the discovery of the injury is *reasonably possible.* (citation omitted). The "discovery rule" arises from the inability of the injured party, despite the exercise of *reasonable diligence,* to know of the injury or its cause. (citation omitted). Its purpose is to exclude the period of time during which the injured party is *reasonably unaware* that an injury has been sustained so that people in that

class have essentially the same rights as those who suffer an immediately ascertainable injury.

*Colonna v. Rice, supra.,* 445 Pa.Super. at 4–5, 664 A.2d at 980 (emphasis added).

 "The standard of reasonable diligence is an objective or external one that is the same for all individuals. It is not a subjective standard." *Id.,* 445 Pa.Super. at 6, 664 A.2d at 981. When information is available, the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence as a matter of law. *Id.,* citing *Baumgart v. Keene Building Products Corporation,* 430 Pa.Super. 162, 169–170, 633 A.2d 1189, 1193 (1993), *alloc. granted,* 537 Pa. 657, 644 A.2d 1195 (1994), *alloc. denied,* 538 Pa. 607, 645 A.2d 1311 (1994).

Thus, the question in this case ultimately becomes whether, in the exercise of due diligence, it was reasonably possible for Appellant, through its predecessors-in-interest, to discover that Appellees were mining its coal before the statute of limitations expired. We conclude, as did the trial court, that the Appellees' conversion of Appellant's coal was the sort of injury which, in the exercise of reasonable diligence, could have been discovered within the statutory period.

In reaching this conclusion, we have considered the decision of our Supreme Court in *Lewey.* There, the plaintiff owned a one and one-quarter acre lot of land which was underlaid with coal. The coal had not been severed from the surface by lease or sale and the plaintiff had made no effort to mine it. The defendant company owned a large amount of coal land in the same area, which ". . . adjoin[ed] and practically surround[ed] the plaintiff's land, and [wa]s engaged in mining and removing its coal through openings in its own lands." *Lewey, supra.,* 166 Pa. at 542, 31 A. at 261. In the mining process, ". . . the defendant company made an opening or passageway through the plaintiff's coal under one corner of his lot, which was from seventy-five to one hundred feet in length, about six feet in height, and eight to nine feet wide." *Id.* The defendant company then removed approximately four thousand bushels

of plaintiff's coal through openings on the defendant company's own land. *Id.* The mining under plaintiff's land took place in 1884, but the conversion was not discovered until 1891; suit was filed by Lewey in 1892.

In *Lewey,* the Supreme Court was confronted with the same issue as that presented here, *to wit,* whether the statute of limitations had run prior to plaintiff's discovery of the coal conversion. Noting the issue to be one of first impression, the Supreme Court concluded that, under the facts of that case, the statute had not expired because "... the statute runs against an injury committed in or to a lower stratum from the time of actual discovery, or the *time when discovery was reasonably possible." Id.,* 166 Pa. at 547, 31 A. at 264 (emphasis added).

In *Lewey,* the Supreme Court determined that the plaintiff there could not reasonably have discovered his injury because there were no ascertainable facts upon which to form a suspicion that a conversion had taken place. The *Lewey* plaintiff's coal had been deep-mined by a defendant company who originally had been engaged in the legitimate mining of its own coal from its own land. There was no surface disruption on Lewey's land and thus he had no way of knowing that the defendant company had exhausted its own coal holdings and had then improperly proceeded to invade his coal estate from one hundred feet under the surface of the earth.

This case is factually distinguishable from *Lewey.* Here, the coal estate had been severed from the earth above it. Thus, while the coal in question was undisputably owned by Stewart and Doberneck at the time of the conversion, it was located under land owned by the Kingston Club. Although the coal in *Lewey* was deep-mined, and thus, there was no surface disruption above the *Lewey* plaintiff's coal estate, the coal in this case was strip-mined, with the attendant open and obvious surface disruption.

Further, unlike in *Lewey,* the conversion in this case was evidenced by many factors. The mining operation was conducted on seven-acres of the Kingston Club's property, which

Stewart and Doberneck knew was underlaid with their coal. The operation was operated within 800 feet of two public roads for a six-month period of time. During that time, no less than 1,144 trucks hauled coal away from the Kingston Club's property during daylight hours. A mining permit relative to the Kingston Club's property was advertised in at least one local newspaper of general circulation, and a sign was posted on the Kingston Club's land, where it intersects a township road, advising that a mining permit had been issued for the property. At the conclusion of the mining operation, a project was undertaken to reclaim portions of Kingston Club's land. The reclamation took five years. During all relevant times, Stewart maintained a permanent residence within 3.7 miles of the mining activity.

Clearly, due to the long-term, open and obvious nature of the mining and reclamation activity taking place on the Kingston Club's property, it was reasonably possible for any person having an interest in the coal estate underlying such property to realize that their interests might be in jeopardy. As the trial court noted, these facts were sufficient to place Appellant's predecessors-in-interest, Stewart and Doberneck, on notice to make further inquiry into the coal mining activity taking place on the Kingston Club's property, which they knew to be in close proximity to their coal holdings. "It seems to be the general doctrine in courts of law that the plaintiff is bound to know of an invasion of the surface of his close ... What is plainly visible, he must see at his peril ..." *Lewey, supra,* 166 Pa. at 544, 31 A. at 262. The fact that Stewart and Doberneck claim that they did not actually know of the mining activity in question is irrelevant because they reasonably could have known of such activity, if only they had looked.

Therefore, as to Appellant's first issue, the trial court correctly determined that the limitations period delineated in 42 Pa.C.S.A. § 5524(3) was not tolled by Appellant's inability to discover the coal conversion.

■ Secondly, Appellant contends that the statute of limitations was tolled due to an intentional misrepresentation made by Felton Mining in its D.E.R. mining permit application. In the application, Felton Mining submitted a sworn statement averring that the coal estate to be mined was owned by the Kingston Club. The permit was subsequently issued and Felton Mining began to remove the coal underneath the Kingston Club's property.

■ Sometime later, when Felton Mining and the Kingston Club became aware that the coal estate in question was actually owned by Stewart and Doberneck, they nevertheless failed to amend their D.E.R. application. According to Appellant, this failure had the effect of concealing the unlawful mining activity from Stewart and Doberneck, who allegedly relied upon the permitting process as a means of protecting their ownership rights in the coal estate.[2]

■ As noted by our Supreme Court in *Molineux v. Reed*, 516 Pa. 398, 532 A.2d 792 (1987):

Where, "through fraud or concealment, *the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry*," the defendant is estopped from invoking the bar of the statute of limitations. *Schaffer v. Larzelere*, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963). Moreover, defendant's conduct need not rise to fraud or concealment in the strictest sense, that is, with an intent to deceive; unintentional fraud or concealment is sufficient. *Walters v. Ditzler*, 424 Pa. 445, 227 A.2d 833 (1967); *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 204 A.2d 473 (1964). Mere mistake, misunderstanding or lack of knowledge is insufficient however, *Schaffer v. Larzelere, supra.*; and the burden

**2.** Although Appellees contend that this particular argument relative to the issue of fraudulent concealment has been waived because it was not presented to the trial court, we reach its merits because the general issue of fraudulent concealment was raised in the pleadings, briefed and argued before the trial court, and addressed in the court's opinion. "Although this court is limited to the *issues* raised by the appellant here and in the lower court, it is not limited to the appellant's *arguments*." *Martin v. Poole*, 232 Pa.Super. 263, 267–268 n.2, 336 A.2d 363, 365–366 n.2 (1975) (emphasis added).

of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company, supra.*

*Molineux v. Reed, supra.,* 516 Pa. at 402–403, 532 A.2d at 794. (emphasis added). Moreover, in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied. *Krevitz v. City of Philadelphia,* 167 Pa. Cmwlth. 412, 421–422, 648 A.2d 353, 357 (1994).

In this case, Appellant has not put forth any evidence whatsoever to indicate that its predecessors-in-interest ever made any inquiries to the D.E.R. regarding the issuance of coal mining permits in the general vicinity of their coal holdings. Further, Appellant has failed to establish how a misrepresentation made by Felton Mining and the Kingston Club to a state agency caused Stewart and Doberneck to deviate from their right of inquiry or relax their vigilance in bringing this conversion action. Appellant's predecessors-in-interest were not excused from their duty to make the proper inquiries regarding their coal estate merely because Felton Mining and the Kingston Club made a fraudulent statement to the D.E.R. in their coal mining application.

Therefore, having concluded that the discovery rule is not applicable under the facts of this case, and that there was no fraud visited upon Appellant's predecessors-in-interest which would toll the two-year statute of limitations in this case, we affirm the trial court's grant of summary judgment.

Order affirmed.