J-A24021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| VINCENT R. GORSKI, JR. AS ADMINISTRATOR OF THE ESTATE OF HILARY GORSKI, DECEASED, ON BEHALF OF SAID DECEDENT'S HEIRS-AT-LAW AND NEXT-OF-KIN, AND IN HIS OWN RIGHT AND AS THE PARENT AND NATURAL GUARDIAN OF BRIANNA GORSKI, A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ANNE E. COLTON, M.D. AND CURT D. MILLER, M.D. | |
| Appellee | No. 2732 EDA 2015 |

Appeal from the Order Entered August 21, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): No. 10-6656

BEFORE:  BOWES, J., OTT, J., and SOLANO, J.

MEMORANDUM BY OTT, J.:                    **FILED JANUARY 05, 2017**

Vincent Gorski, Jr. as administrator of the Estate of Hilary Gorski, deceased, and in his own right and as the parent of Brianna Gorski, minor, (hereinafter "Gorski"), appeals from the order entered August 21, 2015, in the Delaware County Court of Common Pleas, which dismissed with prejudice this medical malpractice action.  The order, entered upon

stipulation of the parties,[1] made final the July 30, 2013, order of the trial court granting defendant Curt D. Miller, M.D.'s, motion for judgment on the pleadings based upon the statute of limitations. On appeal, Gorski contends the trial court erred in determining he failed to plead sufficient facts, which if presented to a jury, would permit application of the doctrine of fraudulent concealment. For the reasons below, we affirm.

The facts underlying this appeal, as pled in Gorski's complaint, are as follows:

> 34. The relevant medical records reveal that on June 18, 2008, Hilary Gorski [decedent] was evaluated in the ED (Emergency Department) of Springfield Hospital following an injury to her right knee which occurred that day when [decedent] stepped out of a truck while at work.
>
> 35. Following evaluation in the Springfield Hospital ED on June 18, 2008, John Kennedy, R.N., a nurse at Springfield Hospital, documented in [decedent's] medical chart that [decedent] had a splint and right knee immobilizer applied, and that she was provided with crutches.
>
> 36. The relevant medical records reveal that prior to her discharge from the Springfield Hospital ED on June 18, 2008, Lloyd Feigenbaum, M.D., a physician at Springfield Hospital, documented in [decedent's] medical chart that [decedent] should follow up with an orthopedic surgeon as soon as possible, and that she should use crutches until cleared by the orthopedic surgeon.

---

[1] As will be discussed *infra*, the parties agreed to submit Gorski's claims against Anne E. Coulton, M.D., to binding arbitration. **See** Stipulation, 8/11/2015.

37.    On June 19, 2008, [decedent] presented to Defendant, Dr. [Anne E.] Colton, [M.D.,] at the offices of Defendant, [Premier] Orthopedic [and Sports Medicine Associates, Ltd.,[2]] for further evaluation and treatment of her right knee injury; following evaluation, Dr. Colton documented in [decedent's] medical chart that [decedent] had stepped out of a truck and her knee "gave out"; that [decedent] had "a good deal of pain along her medial knee"; that [decedent] had no other symptoms except for knee swelling; that [decedent] had "no other injuries or complaints"; that [decedent] used Ortho-Evra for contraception; that [decedent] did not smoke; that [decedent] was "non-weight-bearing in a knee immobilizer with crutches"; Dr. Colton further documented that an MRI examination of [decedent's] right knee was planned, and that [decedent] should remain "toe-touch weight-bearing" only in the immobilizer until her follow-up appointment.

38.  On June 19, 2008, [decedent] had an MRI of her right knee, which was interpreted by Paul Richardson, M.D., a radiologist at Premier Imaging; Dr. Richardson documented that [decedent's] MRI revealed tears of the anterior cruciate and medial collateral ligaments; a posterior capsular tear; contusions; and a possible Segond fracture.

39.  On June 24, 2008, [decedent] returned to Defendant, Dr. Colton, at the offices of Defendants, Orthopedic, for follow-up care and treatment of her right knee injury; at this visit, Dr. Colton documented in [decedent's] medical chart that [decedent] had been wearing the knee immobilizer since the day of her knee injury; that [decedent] had tenderness along her medial collateral ligament and along her medial and lateral joint lines; that [decedent] had "no calf tenderness"; and that [decedent] had an anterior cruciate ligament tear, as well as meniscal tears.

---

[2] Gorski named both Premier Orthopedic and Surgical Orthopedic Associates, P.C., as defendants in this action.  However, shortly after Gorski filed the third amended complaint, the trial court dismissed, with prejudice, his claims against Surgical Orthopedic.  *See* Order, 9/17/2012.  Therefore, for our purposes, the references to "Orthopedic" in the factual recitation pertain only to Premier Orthopedic.

40. At the office visit of June 24, 2008, Defendant, Dr. Colton further documented in [decedent's] medical chart that in light of [decedent's] active job as a cabinet maker, her recommendation was that [decedent] undergo corrective knee surgery; that [decedent] was to be provided with a Bledsoe brace that day; and that [decedent] was to remain in the right knee brace for 6 weeks until surgery could be performed; [decedent] agreed to this plan.

41. On June 25, 2008, Defendant, Brian Fletcher, [a licensed athletic trainer employed by Premier,] documented in [decedent's] medical chart that [decedent] telephoned the office of Defendants, Orthopedic, on June 25, 2008, and complained of intermittent cramping in her right calf for several hours; Brian Fletcher further documented that [decedent] was advised to call back or go to the ED if the symptoms continued over the next 1-2 days. This note by Defendant, Brian Fletcher, is handwritten at the top of and in the margins of a letter on Premier letterhead dated June 19, 2008, which was addressed to the State Workers Insurance Fund.

42. The following day, June 26, 2008, [decedent] may have again attempted to contact Defendants twice by telephone regarding her right calf; however, her call may have been forwarded to Defendants' call/messaging service where she may have left messages that she was experiencing cramping in her calf, as well as coldness in her foot.

43. On or about June 26, 2008, Defendant, Dr. [Curt] Miller, [M.D.,] may have returned [decedent's] messages and spoke with her on the telephone regarding her ongoing complaints.

44. At 7:20 p.m. on June 28, 2008, [Gorski] called 911 when his wife, [decedent], reported, "I can't breathe".

45. Basic Life Support Emergency Medical Services (EMS) arrived at [decedent's] residence t 7:29 p.m. on June 28, 2008; EMS personnel documented that [decedent] was found lying on the floor; that [decedent's] husband reported that she had developed shortness of breath and became dusky and pale; that on the arrival of EMS, [decedent] was awake, tachycardic, tachypneic, with labored breathing and speech; and that [decedent] stated that she could not breathe, and that "I'm going to die".

46. EMS provided emergency medical care for [decedent] at the scene, which included oxygen, intravenous medications, and CPR; that [decedent] developed agonal respirations; that [decedent] was emergently transported to the E[R] of Phoenixville Hospital, departing from the Gorski residence at 7:41 p.m.; that emergency medical care continued while en route to the ED; and that the EMS unit arrived at the Phoenixville Hospital ED at 7:44 p.m. on June 28, 2008.

47. Upon arrival at the Phoenixville Hospital ED on June 28, 2008, the Phoenixville Hospital medical staff documented in [decedent's] medical chart that [decedent] had been found face down on the floor, stating that she couldn't breathe, that her face was blue, and that she "didn't want to die"; the Phoenixville Hospital medical staff further documented that [decedent] arrived at the ED in cardiac arrest; that [decedent] was intubated; and that resuscitation efforts per Advanced Cardiac Life Support (ACLS) protocol were initiated.

48. On June 28, 2008, Randy Grinspan, D.O., a physician at Phoenixville Hospital, documented in [decedent's] medical chart that [decedent] had felt well earlier that day; that [decedent] had developed sudden dizziness and dyspnea; that [decedent] stated that she felt like she was going to die; that EMS was contacted and responded appropriately; that [decedent's] condition deteriorated rapidly; and that [decedent] arrived at the Phoenixville ED with pulseless electrical activity (PEA).

49. On June 28, 2008, Dr. Grinspan further documented in [decedent's] medical chart that [decedent] was treated in the Phoenixville ED for suspected pulmonary embolism due to immobilization while on contraception; that [decedent's] treatment included tPA,[3] as well as epinephrine and atropine; that [decedent] did not respond to aggressive resuscitation measures; and that [decedent] was pronounced dead at 8:50 p.m. on June 28, 2008.

_____

[3] "tPA" is an acronym for "tissue plasminogen activator," a drug that when injected in stroke patients shortly after symptoms occur, dissolves the blood clot causing the stroke. *See* http://www.webmd.com/stroke/guide/stroke-treatment-overview.

50. On June 29, 2008, an autopsy was performed on [decedent], by pathologist, Ian Hood, M.B.; Dr. Hood's autopsy report noted that at the time of her death, [decedent] was wearing "a long metal brace" immobilizing her right leg from "mid-thigh to the ankle", and that [decedent] was taking estrogens for contraception; Dr. Hood further documented that the pulmonary arteries of both of [decedent's] lungs were "packed with thromboemboli up to 8 mm in diameter"; that [decedent] was a "robust, mildly obese adult with no other significant pathology"; and that [decedent's] death was attributed to pulmonary thromboembolism.

51. [Decedent] was 41 years old at the time of her death.

Third Amended Complaint, 5/9/2012, at ¶¶ 34-51 (emphasis omitted).

On June 4, 2010, Gorski filed a medical malpractice action naming Premier Orthopedics, Surgical Orthopedic Associates, Dr. Colton, and "B.E." as defendants. At that time, Gorski was unable to identify Fletcher, because the note on decedent's chart was signed only by his initials, which Gorski interpreted to be "B.E." rather than "B.F." Gorski filed an amended complaint on June 11, 2010, followed by a second amended complaint on December 29, 2010, after learning Fletcher's identity. The case proceeded in discovery.

On February 27, 2012, Gorski took Fletcher's deposition, and discovered for the first time Dr. Miller's involvement in his wife's care. During the deposition, Gorski's counsel asked Fletcher if he "had any other conversations or discussions with Dr. Colton with regard to [the decedent]" that he had not previously disclosed. Videotaped Deposition of Brian D. Fletcher, 2/27/2012, at 109. Fletcher responded Dr. Colton told him that on

the evening of June 26, the decedent "attempted to call the office twice, got their answering service, and then eventually spoke with … the on-call doctor, who was Curt Miller at the time." *Id.* at 110. When asked if there was a record of that conversation, Fletcher stated there was a "printed-out short note" from the answering service documenting the call had been received. *Id.* at 112. Fletcher further testified that the message relayed the decedent "had called with calf cramping and I think coldness in her foot." *Id.* at 113. Dr. Colton told him Dr. Miller returned the decedent's call "spoke with the patient … and then advised that she go to the emergency room." *Id.* at 115.

Based on this new information, Gorski filed a motion for leave to file a third amended complaint. In that motion, Gorski averred: (1) Dr. Miller's "return call and conversation" with the decedent were not included in any of the decedent's medical records; (2) Dr. Miller "omitted to make any documentation of this alleged contact" with the decedent; and (3) these omissions operated to conceal and mislead Gorski as to Dr. Miller's identity as a potential defendant. Motion for Leave of Court to File Plaintiff's Third Amended Complaint, 3/5/2012, at ¶¶ 16, 20-21. Based on these factual allegations, on April 26, 2012, the trial court granted Gorski's motion.

Thereafter, on May 9, 2012, Gorski filed a third amended complaint, for the first time naming Miller as a defendant. In addition to the factual averments stated *supra*, Gorski also alleged Dr. Miller's medical negligence for, *inter alia*:

- 7 -

n)      Failing to adhere to standards for proper documentation, as evidenced by the complete failure to in any way document [decedent's] alleged telephone call to Defendants, Orthopedic, on June 26, 2008;

o)      Failing to adhere to standards for proper documentation, as evidenced by the complete failure to in any way document Dr. Miller's alleged return telephone call to [decedent] on June 26, 2008[.]

Third Amended Complaint, 5/9/2012, at ¶¶ 58(n)-(o).

On June 29, 2012, Dr. Miller filed an answer and new matter asserting, *inter alia*, Gorski's claims were barred by the applicable statute of limitations. **See** Defendant Curt Miller, M.D.'s Answer with New Matter to Plaintiff's Third Amended Complaint, 6/29/2012, at ¶ 107. Gorski filed a reply to the new matter on July 8, 2012, in which he generally denied Dr. Miller's affirmative defense. **See** Plaintiff's Reply to New Matter of Defendant, Curt Miller, M.D., 7/18/2012, at ¶ 107.

On September 11, 2012, Dr. Miller filed a motion for judgment on the pleadings, asserting Gorski's medical malpractice claim against him was time-barred. **See** Motion for Judgment on the Pleadings, 9/11/2012. He further averred that Gorski did not "plead the discovery rule exception to the statute of limitations in the Third Amended Complaint nor did [Gorski] allege fraud as a basis [for] being unable to ascertain Dr. Miller's potential involvement with … decedent's care." **Id.** at ¶ 16. Although Gorski denied Dr. Miller's claims, on July 30, 2013, the trial court entered an order

granting Dr. Miller's motion for judgment on the pleadings, and dismissing him from this medical malpractice action.[4]

The case proceeded against the other named defendants. On June 9, 2014, Premier and Fletcher were dismissed with prejudice from the action. **See** Order, 6/9/2014. Thereafter, on August 11, 2015, the parties entered into the following stipulation:

> This matter has been placed into binding arbitration by agreement of [Gorski] and [Dr. Colton].
>
> It is further stipulated that the above-captioned matter be dismissed with prejudice, subject to any appellate rights held by [Gorski] with respect to [Dr. Miller], for whom Judgment on the Pleadings was entered by Court Order dated July 30, 2013.

Stipulation Dismissing Action Upon Agreement to Binding Arbitration, 8/11/2015. On August 21, 2015, the trial court entered an order dismissing the action pursuant to the parties' stipulation. This timely appeal followed.[5]

In his sole issue presented on appeal, Gorski contends the trial court erred in granting Dr. Miller's motion for judgment on the pleadings.

---

[4] We note Gorski requested the trial court certify its July 30, 2012, order as immediately appealable pursuant to Pa.R.A.P. 341(c). However, the trial court refused to do so. Subsequently, Gorski filed petitions for review in both this Court and the Pennsylvania Supreme Court, which were also denied. **See** Order, 125 EDM 2013, 11/8/2013; Order, 954 MAL 2013, 5/8/2014.

[5] On September 9, 2015, the trial court ordered Gorski to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Gorski complied with the court's directive, and filed a concise statement on September 22, 2015.

Pennsylvania Rule of Civil Procedure 1034 permits a party to move for judgment on the pleadings "[a]fter the relevant pleadings are closed, but within such time as not to unreasonably delay the trial[.]" Pa.R.C.P. 1034(a). Our standard of review of an order granting judgment on the pleadings is well-established:

> [W]e must limit our consideration to the facts set forth in the pleadings, such as the complaint, answer, reply to new matter and relevant documents, and accept as true all of the well-pleaded allegations of the party against whom the motion is granted. Judgment on the pleadings is proper only when no material facts are in dispute. "In reviewing the court's decision, we must determine if the action of the court was based on a clear error of law or whether there were facts disclosed by the pleading which should properly go to the jury. The decision will be affirmed only in cases which are clear and free from doubt."

*Lyons v. Nationwide Ins. Co.*, 567 A.2d 1100, 1101 (Pa. Super. 1989) (footnote and internal citations omitted).

Here, the trial court granted judgment on the pleadings because it found that Gorski's action against Dr. Miller was time-barred by the applicable statute of limitations. *See* 42 Pa.C.S. § 5524(2) (two-year statute of limitations applicable to "[a]n action to recover damages … for the death of an individual caused by the … negligence of another"); 40 P.S. § 1303.513(d) (two-year statute of limitations for wrongful death and survival actions under Medical Care Availability and Reduction of Error ("MCARE")

Act).[6]  Gorski contends, however, he pled sufficient facts, which, if proven
at trial, would result in the tolling of the statute of limitations based upon
the doctrine of fraudulent concealment.  ***See*** Gorksi's Brief at 14.

The doctrine of fraudulent concealment is an offshoot of the discovery
rule,[7] and "serves to toll the running of the statute of limitations."  ***Fine v.
Checcio***, 870 A.2d 850, 860 (Pa. 2005).

> The doctrine is based on a theory of estoppel, and provides that
> the defendant may not invoke the statute of limitations, if
> through fraud or concealment, he causes the plaintiff to relax his
> vigilance or deviate from his right of inquiry into the facts.  The
> doctrine does not require fraud in the strictest sense
> encompassing an intent to deceive, but rather, fraud in the
> broadest sense, which includes an unintentional deception.

***Id.*** (internal citations omitted).  However, "[m]ere mistake,
misunderstanding or lack of knowledge is insufficient … *;* and the burden of
proving such fraud or concealment, by evidence which is clear, precise and
convincing, is upon the asserting party."  ***Molineux v. Reed***, 532 A.2d 792,
794 (Pa. 1987) (citations omitted).  "Moreover, in order for fraudulent

---

[6] Indeed, since decedent died on June 28, 2008, any medical negligence actions arising from her death had to have been filed by June 28, 2010.  The third amended complaint, which first named Dr. Miller as a defendant, was not filed until nearly two years later, on March 9, 2012.

[7] While fraudulent concealment may toll the limitations period in a wrongful death action, "the discovery rule (applicable to other negligence actions) has no application in death claims since death is a 'definitely established event' and puts survivors on immediate notice to determine if any negligence occurred."  ***Matharu v. Muir***, 86 A.3d 250, 264 (Pa. Super. 2014) (*en banc*) (citation omitted).

concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." ***Kingston Coal Co. v. Felton Min. Co.***, 690 A.2d 284, 291 (Pa. Super. 1997), *appeal denied*, 700 A.2d 441 (Pa. 1997).

Here, Gorski contends Dr. Miller's failure to document the June 26, 2008, telephone conversation with the decedent "effectively deceived [him] by concealing Dr. Miller's name from the medical records," upon which Gorski relied to ascertain the potential defendants for his medical malpractice claim. Gorski's Brief at 16. He maintains he was unaware of Dr. Miller's involvement until Fletcher disclosed that information in his February 2012 deposition. ***See id.*** Gorski argues Dr. Miller's "unintentional deception falls under the doctrine of fraudulent concealment." ***Id.*** at 17.

The trial court, however, found that none of the relevant, and necessary, factual averments were included in the pleadings. The court opined:

> Upon review of the pleadings in this matter, in a light most favorable to [Gorski,] it is clear that [Gorski] in the instant action did not assert any factual averments in his Complaint, Reply to New Matter, or other pleading that could support a claim that the discovery rule, the doctrine of fraudulent concealment or the provisions of the MCARE Act would allow tolling of the statute of limitations in this case. In this action, there were literally no facts ple[d] by [Gorski], for [Gorski] to prove, that would go to the jury on this issue of the extension of the limitation period. The Complaint does not allege that the statute of limitations was tolled because there was fraudulent concealment or an affirmative misrepresentation of the cause of [the decedent's] death and does not aver facts that would support such allegations. In fact, [Gorski] did not argue in his

- 12 -

response to Defendant's Motion for Judgment on the pleadings that the Complaint, his Reply to New Matter or other pleading contained such allegations or assertion of facts. [Gorski] only cites averments of medical negligence.

Trial Court Opinion, 11/2/2015, at 11-12.

Our review of the record reveals ample support for the trial court's ruling. We note in the motion for leave to file a third amended complaint, Gorski detailed Dr. Miller's failure to document the June 26, 2008, telephone conversation, and averred that Dr. Miller's "omissions operated to conceal his identity" and "mislead" Gorski "during the course of [Gorski's] evaluation of potential defendants[.]" Motion for Leave to File Plaintiff's Third Amended Complaint, 3/5/2012, at ¶¶ 20-21. Further, Gorski asserted he had no knowledge of Dr. Miller's potential liability until "Brian Fletcher's deposition on February 27, 2012." *Id.* at ¶ 22. However, Gorski failed to include any of these factual averments in his third amended complaint, or in his response to Dr. Miller's new matter. These omissions are fatal to his claim.

As noted *supra*, when considering whether to grant judgment on the pleadings, the trial court must confine its review to "the facts set forth in the **pleadings**." *Lyons*, *supra*, 567 A.2d 1101 (emphasis supplied). Pennsylvania Rule of Civil Procedure 1017 limits the pleadings permitted in a civil action to the following:

(1) a complaint and an answer thereto,

(2) a reply if the answer contains new matter, a counterclaim or a cross-claim,

(3) a counter-reply if the reply to a counterclaim or cross-claim contains new matter,

- 13 -

(4) a preliminary objection and a response thereto.

Pa.R.C.P. 1017(a)(1)-(4). Therefore, the only relevant pleadings filed by Gorski in the present case were his third amended complaint, and his reply to Dr. Miller's new matter. Accordingly, the detailed factual averments in his motion for leave to file a third amended complaint are irrelevant for our purposes.

Looking only at the pleadings, we find Gorski's complaint includes the following relevant factual averments: (1) the decedent "may have" left two messages with Premier's answering service on June 26, 2008, complaining of cramping in her calf and coldness in her foot; and (2) Dr. Miller "may have returned [her] messages and spoke with her on the telephone regarding her ongoing complaints." Third Amended Complaint, 5/9/2012, at ¶¶ 42-43. Nowhere in complaint does Gorski claim Dr. Miller neglected to document the call, nor does he allege Dr. Miller's failure to do so operated to conceal his identity as a potential defendant until after the limitations period had run, when it was finally revealed during Fletcher's deposition.

Gorski maintains, however, that his allegations concerning Dr. Miller's medical negligence raised a claim of fraudulent concealment sufficient to submit the issue to the jury. *See* Gorski's Brief at 15-16. Specifically, Gorski directs our attention to his claims that:

> n) [Dr. Miller failed] to adhere to standards for proper documentation, as evidenced by the complete failure to in any way document [decedent's] alleged telephone call to Defendants, Orthopedic, on June 26, 2008;

> o)      [Dr. Miller failed] to adhere to standards for proper documentation, as evidenced by the complete failure to in any way document Dr. Miller's alleged return telephone call to [decedent] on June 26, 2008[.]

Third Amended Complaint, 5/9/2012, at ¶¶ 58(n)-(o).  He explains, "Dr. Miller's failure to document these calls effectively deceived [Gorski] by concealing Dr. Miller's name from the medical records[.]"  Gorski's Brief at 16.  Further, Gorski argues the allegations were pled with the required specificity:

> [Gorski's] allegations against Dr. Miller include the exact act which a jury could reasonably find to constitute fraud or concealment – failing to document crucial phone calls to and from [the] decedent.  Moreover, [Gorski] even identified the exact date that Dr. Miller unintentionally concealed his identity from [Gorski].

Gorski's Brief at 17.

We conclude, however, the allegations cited above, accepted as true, do not support a claim of fraudulent concealment.  While Gorski averred that Dr. Miller failed to document a telephone call, he did not allege the doctor's failure to do so effectively concealed his identity, or when and how he subsequently learned of Dr. Miller's involvement.

Nor did Gorski plead sufficiently specific facts in his response to Dr. Miller's new matter to raise the claims herein.  Rather, in response to Dr. Miller's allegation that the claims were barred by the applicable statute of limitations, Gorski posited the following general denial:

> 107.  Denied.  [Gorski] specifically denies that any of the claims set forth in [Gorski's] Complaint, as amended, are in any way barred [by] any Statute of Limitations.  By way of further

response, this averment is a conclusion of law to which no responsive pleading is required. Strict proof to the contrary, if material, is demanded at the time of trial.

Plaintiff's Reply to New Matter of Defendant, Curt Miller, M.D., 7/18/2012, at ¶ 107. This response does not assert that Dr. Miller's failure to document the telephone call, even unintentionally, concealed his identity from Gorski.

In **Fox v. Byrne**, 525 A.2d 428 (Pa. Super. 1987), a panel of this Court held that a plaintiff need not reply to a defendant's new matter asserting the statute of limitations if sufficient facts supporting the tolling of the statute are alleged in the complaint. The panel opined:

> [T]here are two ways a plaintiff may proceed when he wishes to assert the "discovery rule". He may wait until the defendant asserts the statute of limitations defense as new matter and file a responsive pleading presenting a factual denial of the defense consistent with application of the discovery rule. Or, he may plead sufficient facts to sustain application of the rule in his initial complaint. In the latter case, the plaintiff need not specifically respond even if the defendant affixes the new matter label to the defense.

*Id.* at 431. Although, here, Gorski issued a general denial of Dr. Miller's affirmative defense, he did not include any facts supporting application of the doctrine of fraudulent concealment in any of the relevant pleadings. Rather, he argues, despite the requirement that a factual basis for application of the doctrine must be included in the pleadings, this Court may, nevertheless, "appreciate and acknowledge the evidentiary development" of the claim through Dr. Miller's deposition testimony. Gorski's Brief at 19. Tellingly, Gorski cites no case law to support this proposition, because our

standard of review precludes us from reviewing **any materials** outside of the pleadings. ***See Lyons***, ***supra***.

Gorski also argues the trial court erred when it declined to address whether his allegations would toll the statute of limitations under the MCARE Act. ***See*** Gorski's Brief at 22. Similar to common law, the MCARE Act provides a two-year limitations period for wrongful death and survival actions "in the absence of affirmative misrepresentation **or fraudulent concealment of the cause of death**." 40 P.S. § 1303.513(d) (emphasis supplied). ***See Matharu v. Muir***, 86 A.3d 250,263 (Pa. Super. 2014) (noting "the statute of limitations set forth in subsection 1303.513(d) is the exact same statute of limitation that was already applicable to wrongful death and survivor claims at the time the Pennsylvania Legislature passed MCARE (including its section 1303.513) in 2002.").

Gorski asserts that Dr. Miller, in his filings below, maintained the term "cause of death" in Section 1303.513(d) referred only to the medical cause of death as recorded on the death certificate, so that once the cause was determined, the limitations period commenced. ***See*** Gorski's Brief at 22. However, Gorski claims "cause of death" includes "any potential defendants who may have played a role in bringing about the medical injury that led to the decedent's death." ***Id.*** Therefore, under Gorski's interpretation, Dr. Miller's failure to document his conversation with the decedent could constitute "fraudulent concealment of the cause of death" under Section 1303.513(d). ***Id.***

The trial court, however, declined to address this question of statutory interpretation, explaining:

> It must be stated … that whether "cause of death" means the medical cause itself OR means any potential defendants who may have played a role in bringing about the medical injury that led to the decedent's death, this Court need not address that issue since [Gorski] in this action failed to plead any facts to support that there was a[] fraudulent concealment or act of misrepresentation that was justifiably relied upon by [Gorski] relating to the cause of death – the medical injury, or the cause of death – a potential defendant. The facts [pled] by [Gorski] are simply insufficient to establish fraudulent concealment under either definition.

Trial Court Opinion, 11/2/2015, at 19. We agree. As noted *supra*, the trial court granted judgment on the pleadings because Gorski neglected to plead the **facts** necessary to support his claim of fraudulent concealment. Accordingly, we agree that whether or not those un-pled facts would relate to the decedent's "cause of death" as set forth in Section 1303.513(d) is irrelevant.

Lastly, Gorski complains the trial court's ruling is unfair because he "had no information whatsoever and no possibility to obtain any information regarding [] Dr. Miller's involvement" in his wife's death until after the statute of limitation has expired. Gorski's Brief at 28. However, we emphasize that Gorski's claim failed based upon his deficient pleadings. He could have included the necessary factual averments in either his third amended complaint, or his reply to Dr. Miller's new matter. **See Fox**,

*supra*. He did not do so, and we are now precluded from granting relief at this belated stage.[8]

Accordingly, because we find no error or abuse of discretion on the part of the trial court, we affirm the order granting judgment on the pleadings.

Order affirmed.

_____

[8] We note the question of whether the trial court should have permitted Gorski to file a **fourth** amended complaint is not before us. Indeed, in a second reply to Dr. Miller's motion for judgment on the pleadings, Gorski argued, alternatively, that the trial court should grant him permission to, once again, amend his complaint. *See* Plaintiff's Sur-Reply to Reply Brief of Defendant, Curt D. Miller, M.D., in Response to Plaintiff's Opposition to Motion for Judgment on the Pleadings, 11/2/2012, at 2. However, he did not repeat that request in either of his two subsequent replies filed before the court issued its July 30, 2013, order, or in his brief before this Court on appeal. Therefore, while this Court has, in prior decisions, reversed an order granting judgment on the pleadings when the appellant had sought permission to amend his complaint and cure the pleading defects, Gorski waived any such relief in this case. *See Puleo v. Broad St. Hosp.*, 2407 A.2d 394, 396 (Pa. Super. 1979) ("Thus, even though judgments on the pleadings were properly entered, the trial court, acting upon an application to reconsider, should have permitted appellant an opportunity to amend his reply to aver facts sufficient to avoid the bar of the statute of limitations."). *Lyons*, *supra*, 567 A.2d at 1103 n.2 (distinguishing *Puleo* when the appellant "did not request an opportunity to amend her pleadings").

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/5/2017</u>