J-A09013-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAMES J. CAMPBELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANDREW S. DREGER, JAN DREGER | : | |
| AND ARTHUR F. DREGER, JR. | : | |
| | : | No. 1210 EDA 2018 |
| v. | : | |
| | : | |
| | : | |
| ROBERT CAMPBELL | : | |
| | : | |
| | : | |
| APPEAL OF: ANDREW S. DREGER | : | |
| AND ARTHUR F. DREGER, JR. | : | |

Appeal from the Judgment Entered, April 16, 2016,
in the Court of Common Pleas of Delaware County,
Civil Division at No(s):  2016-006579.

BEFORE:   KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED JUNE 07, 2019**

Andrew S. Dreger and Arthur F. Dreger, Jr. (son and father) appeal from the entry of judgment in favor of Robert Campbell (Andrew's ex-father-in-law).  The court of common pleas held, as a matter of law, that the statute of limitations time barred all of Andrew's and Arthur's causes of action against Robert.  Andrew and Arthur argue that they offered sufficient evidence to create a question of fact as to whether Robert fraudulently concealed his failure to transfer certain real estate to Andrew.  Because there is no evidence

_____

*   Retired Senior Judge assigned to the Superior Court.

that Robert concealed his alleged breaches of promise or his alleged fraud from the Dregers (much less conduct that would lead a reasonable person to believe that Robert had transferred the property in question), we affirm.

The trial court related the facts from the Dregers' case-in-chief as follows:

> Prior to 2004, brothers James and Robert Campbell managed a bar and restaurant known as Campbell's Boat House[.] The Campbell brothers owned equal shares of Campbell's Boat House, Inc. ("CBH"), the corporate entity which operated Campbell's Boat House. At that time, James and Robert also owned the real estate on which CBH stood[.]
>
> In 2004, [James] sold his interest in CBH to [Andrew.] At the time, [Andrew] and [Robert's] daughter, [Jan,] were husband and wife. On April 10, 2004, [Andrew, Jan, and James] signed a letter of intent which confirmed "in principal" the purchase of [James'] portion of CBH.
>
> On October 27, 2004, [Andrew] executed a Sale Agreement for the purchase of shares of CBH from [James]. In the Sale Agreement, [Robert] authorized the sale of the shares in CBH to [Andrew by James] and also executed a Guaranty of [Andrew's] debt for the purchase of the shares. As part of the Sale Agreement, [James] transferred his interest in the [property] to [Robert] and executed a Deed to memorialize the transfer. [Arthur] executed a Guaranty as surety for [Andrew's] financial obligations under the Sale Agreement.
>
> In addition, on October 27, 2004, [Andrew and Robert] executed a Side Agreement ". . . for the purpose of setting forth their understanding as to certain matters between them and as relate to [CBH and the property]". The Side Agreement further contained a buy/sell agreement as to the transfer of the [property to Andrew by Robert's widow] or estate should [Robert's] wife predecease him. The Side Agreement did not provide for the transfer of the property to [Andrew].

The instant matter was instituted on August 1, 2016 by [James] seeking to collect on a Note against [Andrew and Jan], who were divorcing. [Andrew and Arthur] filed cross-claims and joined [Robert] as an additional defendant. In their Answer and Counter/Cross-claims, [Andrew and Arthur] asserted claims for fraud, promissory estoppel, and unjust enrichment.

At trial, [Andrew and Arthur] claimed that oral assurances were made prior to the execution of the Sale Agreement and Side Agreement. Specifically, [they] asserted that, sometime in July 2004, [Robert] promised to transfer [James'] interest in the [property to Andrew and Jan] within "one and one and one-half years" of the execution of the Sale Agreement. It was claimed the agreement was made to avoid the payment of Pennsylvania realty transfer tax. This Agreement was never placed in writing.

At all relevant times between the execution of the Letter of Intent and the execution of the Sale Agreement and Side Agreement, [Andrew] was represented by counsel, Christine Berry, Esquire. On July 26, 2004, [Andrew] had a telephone consultation with [Ms. Berry], during which [she] informed [Andrew] that, to assure the [property] would be transferred to him, an additional written and executed "Side Agreement" setting forth the terms of the alleged real estate transfer agreement [was] required. Ms. Berry counselled [Andrew] not to execute the Sale Agreement and Side Agreement absent a memorialization of the alleged promise to transfer the [property to Andrew]. [Arthur] also recommended [Andrew] not execute the Sale Agreement or Side Agreement prior to the closing of the transaction. Despite the recommendation of counsel and his father, [Andrew] voluntarily executed the Sale Agreement and Side Agreement.

At trial, following the close of [Andrew and Arthur's] case-in-chief, [Robert moved] for compulsory nonsuit, pursuant to Pa.R.C.P. 230.1.

Trial Court Opinion, 7/9/18, at 1-4 (citations omitted).

Applying the statute of limitations and finding all of Andrew and Arthur's claims untimely, the trial court granted that motion. Andrew and Arthur filed a post-trial motion to remove the nonsuit, which the trial court did not rule upon. After 120 days, the prothonotary entered judgment in favor of Robert, and this timely appeal followed. Andrew and Arthur and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

Andrew and Arthur raise one issue on appeal. They ask:

> Did the trial court err in granting a compulsory nonsuit, where the evidence, construed in the light most favorable to Andrew, demonstrates that the statute of limitations did not begin running until the fall of 2015, less than two years before Andrew's counterclaims, thus making Andrew's counterclaims timely?

*See* Andrew and Arthur's Brief at 6.

Andrew and Arthur believe that Robert is equitably estopped from asserting the statute of limitations as a defense in this action, because he fraudulently concealed the fact that he did not transfer the CBH property to Andrew. *See id.* at 19. They argue that Robert made oral admissions between 2004 and 2015 indicating that he (a) should have and (b) would eventually transfer the property to Andrew. "Robert promised to carry it out and said that he simply had never got around to it." *Id.* at 21. Andrew and Arthur claim that the evidence of record, when viewed in their favor, can establish that these statements amounted to fraudulent concealment.

In reviewing a grant of compulsory nonsuit our scope of review is all the evidence adduced at trial, "giving the appellant the benefit of every reasonable

inference and resolving all evidentiary conflicts in his favor. . . ." ***Agnew v. Dupler***, 717 A.2d 519, 523 (Pa. 1998). Also, we afford the trial court's award of judgment as a matter of law no deference; thus, our standard of review is *de novo*. ***See Id.*** We must decide whether Robert deserved judgment as a matter of law, because no genuine issues of material fact remained in dispute at the close of Andrew and Arthur's case.

In dismissing the case on statute-of-limitations grounds, the trial court opined:

> An action to recover damages for injury to person or property which sounds in fraud is governed by a two-year statute of limitations. ***See*** 42 Pa.C.S.A. § 5524(7). Typically, the two-year period begins to run as soon as the right to institute and maintain a suit arises. ***See Crouse v. Cyclops Indus.***, 745 A.2d 606, 611 (Pa. 2000); ***Toy v. Metro. Life Ins. Co.***, 863 A.2d 1, 7 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007). Actions sounding in promissory estoppel, which renders otherwise unenforceable agreements binding, sounds in contract law and thus is governed by a four-year limitations period for contract actions, rather than the six-year, "catch-all" limitations statute. 42 Pa.C.S.A. §§ 5525, 5527; ***Crouse v. Cyclops Indus.***, 745 A.2d 606 (Pa. 2000). Similarly, the statute of limitations on an unjust-enrichment claim is four years. ***See*** 42 Pa.C.S.A. § 5525(a)(4)[.]
>
> There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitations. Statutes of limitations are designed to effectuate three purposes: (1) preservation of evidence; (2) the right of potential defendants to repose; and (3) administrative efficiency and convenience. ***Kingston Coal Co. v. Felton Min. Co.***, 690 A.2d 284, 288 (Pa. Super. 1997) (internal citations omitted). As a matter of general rule, a party asserting a cause of action is under a duty to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is

based and to institute suit within the prescribed statutory period. *Id.* Thus, the statute of limitations begins to run as soon as the right to institute and maintain suit arises; lack of knowledge, mistake, or misunderstanding do not toll the running of the statute of limitations. *Id.*

At trial . . . this Court determined the [Sale Agreement] was executed by the parties, including [Andrew and Robert on October 27, 2004. The testimony of Christine Berry, Esquire corroborated her notes made contemporaneously with discussions among the parties and counsel, stating that, within one and a half (1½) years of October 27, 2004, a conveyance would be made by [Robert to Andrew].

One and a half (1½) years following the October 27, 2004 execution would be April 27, 2006. The applicable statute of limitations on a cause of action sounding in fraud is two (2) years, and the applicable statute of limitations on a cause of action sounding in either promissory estoppel or unjust enrichment is four (4) years. Two (2) years after April 27, 2006 is April 27, 2008, and correspondingly, four (4) years after April 27, 2006 is April 27, 2010. Even in the light most favorable to [Andrew and Arthur], the evidence admitted in [Andrew and Arthur's] case-in-chief revealed [they] took no action to investigate whether the final conveyance of the real estate to [Andrew] occurred until November 2015. Moreover, [they] did not bring a cause of action related to the ownership of the [property] until 2016. Generally, a plaintiff is required to exercise reasonable diligence to inform himself of the facts upon which his right to recovery is premised. *Fine v. Checcio*, 870 A.2d 850, 859 (Pa. 2005).

Trial Court Opinion, 7/9/18, at 6-9 (some citations omitted). Accordingly, the trial court found that the Andrew and Arthur's 2016 counter-claims came at least six years too late.

Andrew and Arthur have not appealed the trial court's recitation of the general rules regarding the statute of limitations or its calculation of the time

frames. Instead, they argue that the trial court counted from the wrong date, because the doctrine of fraudulent concealment allegedly estopped Robert from relying upon the statute of limitations until no earlier than 2015. Hence, if Andrew and Arthur did not prove a fraudulent concealment upon which they could reasonably rely, the trial court's application of the statute of limitations must stand.

The doctrine of fraudulent concealment "provides that the defendant may not invoke the statute of limitations, if through fraud or concealment, he causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts." *Fine*, 870 A.2d at 860. "The plaintiff has the burden of proving fraudulent concealment by clear, precise, and convincing evidence", and "it is for the court to determine whether an estoppel results from established facts". *Id.*

Moreover, fraudulent concealment and the discovery rule (also explored in *Fine*) dovetail; both require plaintiffs to investigate claims based upon what they know or should reasonably know. The *Fine* Court said, "the standard of reasonable diligence, which is applied . . . under the discovery rule, also should apply when tolling takes place under the doctrine of fraudulent concealment." *Id.* at 861. Thus, even with an affirmative act of concealment, the statute of limitations starts to run "when the injured party knows or reasonably should know of his injury and its cause." *Id.*

Here, the Andrew and Arthur's fraudulent-concealment theory fails on two grounds.

- 7 -

First, "in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative, independent act of concealment upon which the plaintiffs justifiably relied." *Kingston Coal*, 690 A.2d at 291. Andrew and Arthur point to no evidence of record showing an affirmative, independent act by Robert concealing anything from them. Nor does our review of the record reveal such an act of concealment.

In 2015, when Andrew and Arthur confronted Robert about not transferring the property to Andrew, Robert did not conceal his shortcoming. He flatly admitted that he had not deeded the property to Andrew. Thus, rather than hide any unjust enrichment, fraud, or promissory estoppel, Robert confessed to his inaction. The fact that he said he would make good on the promise in the future – i.e., after Andrew paid James in full – likewise did not hide the alleged breach or toll the statute of limitations. It underscores that a breach (if any) already occurred – on April 27, 2006 – as the trial court found. Thus, there is no genuine issue of material fact as to whether Robert committed a fraudulent concealment, because there is no evidence of record that he kept anything secret.

Second, even if Robert had attempted to conceal his alleged breach and fraud by mere words – i.e., if he had said something like, "I transferred the property to you already; it's all yours" – that statement would not cause a reasonable person to relax his or her vigilance in a real estate transaction, as a matter of law. A reasonable person in Andrew's place should have known

that the transfer had not occurred, because Andrew never attended a closing or received a deed naming him owner of the property.

To transfer title to real estate in this Commonwealth certain formalities must be observed, not the least of which is delivery of a deed. "Delivery of a deed is necessary to render it legally operative. The general principle of law is that the formal act of signing, sealing, and delivering is the consummation of the deed." *In re Estate of Plance*, 175 A.3d 249, 260 (Pa. 2017) (citations omitted). Accordingly, there is no way for a grantor to conceal the fact that he failed to transfer legal title to land, unless the grantor forged a deed and tricked the grantee into thinking that a transfer had occurred. None of the steps for transferring land occurred here, and Andrew and Arthur make no suggestion that Robert forged a deed or orchestrated a fake closing.

They had no reasonable basis to believe for ten years that Andrew was the owner of the property, when clearly he was not. Thus, Robert did not trick or lull them into believing that he had kept his October 27, 2004 promise to convey the land, the promise upon which the Dregers' entire counter-claim is founded.

The trial court rightly entered a compulsory nonsuit against Andrew and Arthur, because they presented absolutely no evidence of a concealment by Robert. They also did not produce any evidence from which a reasonable person could believe that Robert had transferred the property to Andrew. As such, Robert did nothing of record to conceal his alleged breach of promises or his alleged fraud from Andrew and Arthur, as a matter of law.

- 9 -

The trial court correctly granted compulsory nonsuit in favor of Robert.

Judgment affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/7/19